637 S.E.2d 560

**Craig A. HURST, Appellant,**

**v.**

**EAST COAST HOCKEY LEAGUE, INC.; Knoxville Cherokees Hockey, Inc., d/b/a Pee Dee Pride Hockey, and d/b/a Florence Pride Hockey; Florence City–County Civic Center Commission d/b/a Florence City–County Civic Center; City of Florence; and County of Florence, Respondents.**

No. 26222.

Supreme Court of South Carolina.

Heard Oct. 4, 2006.

Decided Nov. 13, 2006.

Stephen J. Wukela, of Florence, for Appellant.

Robert T. King, of Willcox, Buyck & Williams, of Florence, for Respondents.

Justice BURNETT:

Craig A. Hurst (Appellant) appeals the circuit court's grant of summary judgment in favor of East Coast Hockey League, Inc.; Knoxville Cherokees Hockey, Inc., d/b/a Pee Dee Pride Jockey, and d/b/a Florence Pride Hockey ("Pride"); Florence City–County Civic Center Commission ("Commission") d/b/a Florence City–County Civic Center ("Civic Center"); City of Florence; and County of Florence (collectively referred to as Respondents). We certified the case for review from the Court of Appeals pursuant to Rule 204(b), SCACR. We affirm.

## FACTUAL/PROCEDURAL BACKGROUND

Appellant filed this negligence action against Respondents for injuries he sustained while attending a Pride hockey game at the Civic Center on January 11, 2002. During pregame warm-ups, Appellant entered the spectator area at the Civic Center through a curtained concourse entrance behind one of

the goals. Appellant was struck in the face by a puck while standing behind the goal.

At the time of the accident, the ice rink at the Civic Center was encircled by dasher boards and a protective Plexiglas wall, which was attached to the top of the dasher boards. Also at that time, the Pride was a member of the East Coast Hockey League, Inc., a professional hockey league. The Pride played home games at the Civic Center under a lease with the Commission. The Civic Center was maintained and operated by the Commission, a governmental entity created by the City of Florence and the County of Florence.

After a hearing on the matter, the circuit court determined the risk of pucks leaving the ice rink and entering the spectator area is well-known, obvious, and inherent to the game of hockey. The circuit court granted summary judgment in favor of Respondents based on the doctrine of primary implied assumption of risk.

## ISSUE

Did the circuit court err in granting summary judgment?

## STANDARD OF REVIEW

When reviewing the grant of a summary judgment motion, the appellate court applies the same standard which governs the trial court under Rule 56(c), SCRCP: summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. In determining whether any triable issues of fact exist, the evidence and all reasonable inferences therefrom must be viewed in the light most favorable to the non-moving party. On appeal from an order granting summary judgment, the appellate court will review all ambiguities, conclusions, and inferences arising in and from the evidence in a light most favorable to the non-moving party below. *Osborne v. Adams*, 346 S.C. 4, 7, 550 S.E.2d 319, 321 (2001).

## LAW/ANALYSIS

Appellant argues the circuit court erred in granting summary judgment for Respondents based on the doctrine of primary implied assumption of risk. We disagree.

■ To prove negligence, a plaintiff must prove the following elements: (1) a duty owed to the plaintiff by the defendant, (2) a breach of that duty by the defendant, and (3) damages proximately resulting from the breach of duty. *Steinke v. S.C. Dep't of Labor, Licensing and Regulation,* 336 S.C. 373, 387, 520 S.E.2d 142, 149 (1999). The court must determine, as a matter of law, whether the law recognizes a particular duty. If there is no duty, then the defendant in a negligence action is entitled to a judgment as a matter of law. *Id.* at 387, 520 S.E.2d at 149.

■ "Primary implied assumption of risk arises when the plaintiff impliedly assumes those risks that are *inherent* in a particular activity." *Davenport .v. Cotton Hope Plantation Horizontal Prop. Regime,* 333 S.C. 71, 81, 508 S.E.2d 565, 570 (1998) (emphasis in original).[1] The *Davenport* Court further explained the doctrine as follows:

> Primary implied assumption of risk is not a true affirmative defense, but instead goes to the initial determination of whether the defendant's legal duty encompasses the risk encountered by the plaintiff.... [T]he Tennessee Supreme Court summarized the doctrine in the following way:
>
>> In its primary sense, implied assumption of risk focuses not on the plaintiff's conduct in assuming the risk, but on the defendant's general duty of care.... Clearly primary implied assumption of risk is but another way of stating the conclusion that a plaintiff has failed to establish a prima facie case [of negligence] by failing to establish that a duty exists.
>
> [*Perez v. McConkey,* 872 S.W.2d 897, 902 (Tenn.1994)]. In this sense, primary implied assumption of risk is simply a part of the initial negligence analysis.

333 S.C. at 81, 508 S.E.2d at 570 (internal citations omitted); *see also id.* at 81 n. 3, 508 S.E.2d at 570 n. 3 (finding *Gunther v. Charlotte Baseball, Inc.,* 854 F.Supp. 424 (D.S.C.1994) implicitly applied primary implied assumption of risk).

The issue before the Court is whether Respondents owed a duty of care to protect Appellant from flying pucks. We find

---

1. The *Davenport* Court also found the adoption of comparative negligence in this state did not affect the doctrine of primary implied assumption of risk. 333 S.C. at 87, 508 S.E.2d at 574.

*Gunther* instructive because the risk of being injured by a foul ball at a baseball game and the risk of being injured by a flying puck at a hockey game are similar risks. *See also Modec v. City of Eveleth,* 224 Minn. 556, 29 N.W.2d 453, 456 (1947) (finding no difference between baseball and hockey when determining liability for injuries sustained from a foul ball or a flying puck); *Pestalozzi v. Philadelphia Flyers Ltd.,* 394 Pa.Super. 420, 576 A.2d 72, 74 (1990) (finding no difference between flying balls and flying pucks when determining the risk assumed by the spectators of baseball and hockey games). In *Gunther,* a spectator who was struck in the face by a foul ball during a baseball game sued the owner of the baseball team and the stadium alleging negligence. 854 F.Supp. at 425. The *Gunther* Court found "the vast majority of jurisdictions recognize this hazard [of being struck by a foul ball] to be a risk that is assumed by the spectators because it remains after due care has been exercised (erecting a screen), and it is not the result of negligence by the ball club." *Id.* at 428 (citing *Anderson v. Kansas City Baseball Club,* 231 S.W.2d 170 (Mo.1950)). The Gunther Court then found the spectator voluntarily assumed the risk of her injuries and granted summary judgment to the owner and the stadium.

■ Under the doctrine of implied primary assumption of risk, Respondents' duty of care did not encompass the risk involved. The risk of a hockey spectator being struck by a flying puck is inherent to the game of hockey and is also a common, expected, and frequent risk of hockey. *See generally* Prosser Keeton, *The Law of Torts* 684 (5th ed. 1984) ("[T]hose who participate or sit as spectators at sports ... may be taken to assume the known risks of being hurt by ... hockey pucks...."). Respondents did not have a duty to protect Appellant, a spectator, from inherent risks of the game of hockey.[2] *See also Nemarnik v. Los Angeles Kings Hockey Club, L.P.,* 103 Cal.App.4th 631, 127 Cal.Rptr.2d 10 (2002) (hockey arena owners and operators, hockey league, and pro-

---

2. The application of the primary implied assumption of risk doctrine to a hockey spectator may not completely absolve hockey arena owners and operators of all duties. *See, e.g., Wagner v. Thomas J. Obert Enters.,* 396 N.W.2d 223 (Minn.1986) (primary implied assumption of risk did not apply to negligent maintenance and supervision of a skating rink because these are not inherent risks of skating).

fessional ice hockey team did not owe a duty to spectator to eliminate the inherent risk of injury from flying pucks); *Modec*, 29 N.W.2d at 456–57 (spectator at hockey game assumes risk of injury from inherent risks of game); *Ingersoll v. Onondaga Hockey Club Inc.*, 245 A.D. 137, 281 N.Y.S. 505 (1935) (hockey rink operators did not owe a duty to protect a spectator from flying pucks, which is a risk incidental to the activity); *Pestalozzi*, 576 A.2d at 74–75 (same); *Kennedy v. Providence Hockey Club, Inc.*, 119 R.I. 70, 376 A.2d 329 (R.I.1977) (spectator at a hockey game assumed risk of injury from flying pucks); *see generally* W.E. Shipley, *Liability for Injury to One Attending Hockey Game or Exhibition*, 14 A.L.R.3d 1018 (1967) (collecting cases that involve the issue of whether a hockey arena owner or operator owes a duty to protect hockey spectators from flying pucks).

## CONCLUSION

Based on the foregoing analysis, we conclude Appellant's action fails as a matter of law under primary implied assumption of risk. The circuit court properly granted summary judgment for Respondents.

**AFFIRMED.**

TOAL, C.J., MOORE, WALLER and PLEICONES, JJ., concur.