711 S.E.2d 908

J. DOE, by and through his Guardian
ad Litem, F. DOE, Appellant,

v.

WAL–MART STORES, INC. and Dorchester County
Department of Social Services, Defendants,

of which Wal–Mart Stores, Inc. is the Respondent.

No. 26993.

Supreme Court of South Carolina.

Heard Feb. 15, 2011.

Decided June 27, 2011.

Russell S. Stemke, of Isle of Palms, for Appellant.

Regina H. Lewis, of Gaffney, Lewis & Edwards, of Columbia, for Respondent.

Justice PLEICONES.

Appellant brought an action against respondent Wal–Mart Stores, Inc. ("Wal–Mart") alleging various theories of negligence. The circuit court granted summary judgment in favor of Wal–Mart. We affirm.

## FACTS

This case arises from the physical and sexual abuse of then three-year-old J. Doe ("the victim"). The facts, in the light most favorable to appellant, are as follows. Appellant, F. Doe, is the victim's guardian ad litem and great uncle. F. Doe and his wife ("the aunt") often kept the victim for months at a time. According to the aunt, both of the victim's parents physically abused him beginning when he was three months old. She claimed she had seen bruising on the victim's legs and buttocks, and had observed the father "thump" the victim in the mouth and hit the child with a fly swatter. She did not, however, report the abuse to DSS or the police or seek medical attention for the victim. The aunt did not report the abuse because she feared DSS would remove the victim from his parents' home and she would not be allowed to see him.

In August 1997, upon picking up the victim from his parents' house, the aunt was informed by the victim's mother that the victim had bruises on his buttocks because he had fallen down the steps. After arriving at her house, the aunt examined the victim and found two "wide strips" of bruising on his buttocks. Again, she did not contact the police or DSS or seek medical treatment. Instead, she took two photographs of the victim's buttocks.

After the victim had been in the aunt's custody for several hours, the victim's father called her and told her to bring the victim home because DSS was there. The aunt took the victim home as requested, but did not attempt to speak with the DSS worker who was investigating the abuse allegations.

This investigation did not result in the victim's removal from the home.

Several days later, the aunt took the roll of film, which included other unrelated photographs, to Wal–Mart to be developed. When the aunt retrieved the photos, a photo technician informed her she had destroyed some of the photos because of a store policy requiring the destruction of photos depicting nudity. The aunt explained to the employee she needed the photos to give to DSS and pleaded with her to provide the photos. The aunt claimed the employee refused and told her she was required to "destroy them," which the aunt believed meant the employee had destroyed the photos and the negatives. The employee did not, however, destroy the negatives. The aunt left the store with the remainder of the photos and all of the negatives, but erroneously believed the negatives depicting the victim's buttocks had been destroyed.

According to the aunt, the victim's father began sexually abusing him in September 1997, approximately one month after the incident that had caused the aunt to take the photos and DSS to investigate. In December 1997, while giving the victim a bath, the aunt noticed signs of sexual abuse. The aunt took the victim to a doctor who examined the victim and determined he had been sexually abused. The aunt and the doctor contacted DSS, and the victim was placed in the aunt's custody.

Father pled guilty to first degree criminal sexual conduct and was sentenced to twenty-five years' imprisonment.

In 2003, appellant instituted this action, arguing the victim's injuries from the sexual abuse were a result of (1) Wal–Mart's failure to report the suspected physical abuse depicted in the photos as required by the Reporter's Statute;[1] and/or (2) Wal–Mart's negligent hiring and supervision of its employees and its violations of approximately twenty internal company policies. The circuit court granted Wal–Mart's motion for summary judgment.

---

1. S.C.Code Ann. § 63–7–310 (Supp.2010).

## ISSUE

Did the circuit court err in granting summary judgment in favor of Wal–Mart?

## STANDARD OF REVIEW

When reviewing an order granting summary judgment, the appellate court applies the same standard as the trial court. *Fleming v. Rose,* 350 S.C. 488, 493, 567 S.E.2d 857, 860 (2002). Summary judgment is appropriate when there is no genuine issue of material fact such that the moving party must prevail as a matter of law. Rule 56(c), SCRCP. In determining whether any triable issues of material fact exist, the court must view the evidence and all reasonable inferences that may be drawn from the evidence in the light most favorable to the non-moving party. *Fleming,* 350 S.C. at 493–94, 567 S.E.2d at 860.

## LAW/ANALYSIS

The circuit court granted summary judgment in favor of respondent, finding Wal–Mart incurred no civil liability for failing to report the suspected child abuse as required by the Reporter's Statute. The circuit court also found Wal–Mart had no common law duty to warn or protect the victim, and that Wal–Mart's internal policies did not create such a duty.

### I. Civil Liability Under the Reporter's Statute

█ Appellant first argues the circuit court erred in finding Wal–Mart did not have any civil liability for failing to report the suspected child abuse as required by the South Carolina Reporter's Statute. We disagree.

The Reporter's Statute provides, in pertinent part:

... [P]ersons responsible for processing films ... must report in accordance with this section when in the person's professional capacity the person has received information which gives the person reason to believe that a child has been or may be abused or neglected as defined in Section 63–7–20.[2]

---

2. Section 63–7–20 defines "child abuse or neglect" as a number of actions carried out expressly by "the parent, guardian, or other person responsible for the child's welfare."

S.C.Code Ann. § 63–7–310(A) (Supp.2010).

In *Doe v. Marion*, 373 S.C. 390, 645 S.E.2d 245 (2007), the Court found there could be no private right of action for failing to report suspected or known child abuse in accordance with § 63–7–310. In deciding whether § 63–7–310 gives rise to a private cause of action for negligence *per se*, the Court noted the main factor in determining whether a statute creates a private cause of action is legislative intent:

> The legislative intent to grant or withhold a private right of action for violation of a statute or the failure to perform a statutory duty, is determined primarily from the language of the statute. . . . In this respect, the general rule is that a statute which does not purport to establish a civil liability, but merely makes provision to secure the safety or welfare of the public as an entity is not subject to a construction establishing civil liability.

*Id.* at 396, 645 S.E.2d at 248 (quoting *Dorman v. Aiken Communications, Inc.*, 303 S.C. 63, 67, 398 S.E.2d 687, 689 (1990)).

The Court first observed § 63–7–310 is silent as to civil liability for failure to report. Noting other provisions in the Reporter's Statute do impose civil liability,[3] the Court found the legislature's silence as to civil liability in § 63–7–310 indicated its intent not to create civil liability for failing to report as required. *Id.* at 397, 645 S.E.2d at 249 (citing *Byrd v. Irmo High Sch.*, 321 S.C. 426, 433–34, 468 S.E.2d 861, 865 (1996) (finding when one provision does not include a right that is included in a related provision, legislative intent is that a right will not be implied where it does not exist)).

Further, the Court looked to the purpose of the Children's Code and determined § 63–7–310 is concerned with the protection of the public and not with the protection of an individual's private right. *Id.* at 398, 645 S.E.2d at 249. The Court also noted other jurisdictions have interpreted similar statutes and reached the same conclusion. *Id.* at 198 n. 4, 645 S.E.2d at 249 n. 4.

---

3. Namely, §§ 20–7–567 and –570 (now §§ 63–7–440 and –430) impose civil liability for making a false report.

Because, consonant with *Doe v. Marion*, there can be no private cause of action under § 63–7–310, we find the circuit court properly granted summary judgment in favor of respondent as to this claim.

## II. *Other Causes of Action*

Appellant also asserts the circuit court erred in granting summary judgment in favor of Wal–Mart on various other theories of common law negligence. We disagree.

Respondent has an internal policy against developing photos depicting nudity. The policy requires employees to bring to the attention of the store manager pornographic pictures of children where child abuse is suspected. It also prohibits the printing of pictures depicting nudity and requires they be shredded if printed in error. There is an exception for cases of suspected child abuse, where the developed photos must be kept as evidence. However, the policy requires processed negatives be returned to the customer.

In order to establish a claim for negligence, a plaintiff must show: (1) the defendant owes a duty of care to the plaintiff; (2) defendant breached the duty by a negligent act or omission; (3) defendant's breach was the actual or proximate cause of the plaintiff's injury; and (4) plaintiff suffered an injury or damages. *Doe v. Marion*, 373 S.C. at 400, 645 S.E.2d at 250. Whether a defendant has acted negligently is a mixed question of law and fact. *Moore v. Weinberg*, 373 S.C. 209, 221, 644 S.E.2d 740, 746 (Ct.App.2007). First, the court must determine, as a matter of law, whether the law recognizes a particular duty. If there is no duty, the defendant is entitled to a judgment as a matter of law. *Id.* (internal citations omitted).

"Under South Carolina law, there is no general duty to control the conduct of another or to warn a third person or potential victim of danger." *Faile v. S.C. Dep't of Juvenile Justice*, 350 S.C. 315, 334, 566 S.E.2d 536, 546 (2002). We recognize five exceptions to this rule: 1) where the defendant has a special relationship to the victim; 2) where the defendant has a special relationship to the injurer; 3) where the defendant voluntarily undertakes a duty; 4) where the defen-

dant negligently or intentionally creates the risk; and 5) where a statute imposes a duty on the defendant. *Id.*

■ The defendant may have a common law duty to warn potential victims under the "special relationship" exception when the defendant "has the ability to monitor, supervise, and control an individual's conduct" and when "the individual has made a specific threat of harm directed at a specific individual." *Doe v. Marion, supra* (quoting *Bishop v. South Carolina Dep't of Mental Health*, 331 S.C. 79, 86, 502 S.E.2d 78, 81 (1998)).

■ Once a duty has been established, it is the further function of the court to determine and formulate the standard of conduct to which the duty requires the defendant to conform. 57A Am.Jur.2d *Negligence* § 132. "The fact finder may consider relevant standards of care from various sources in determining whether a defendant breached a duty owed to an injured person in a negligence case." *Madison ex rel. Bryant v. Babcock Center, Inc.*, 371 S.C. 123, 140, 638 S.E.2d 650, 659 (2006). "The standard of care in a given case may be established and defined by the common law, statutes, administrative regulations, industry standards, or a defendant's own policies and guidelines." *Id.* (citing *Peterson v. Natl. R.R. Passenger Corp.*, 365 S.C. 391, 397, 618 S.E.2d 903, 906 (2005). It follows that, if no duty has been established, evidence as to the standard of care is irrelevant. Only when there is a duty would a standard of care need to be established.

■ The circuit court found Wal–Mart neither owed any common law duty to the victim, nor did it create or undertake any duty when its employees failed to follow Wal–Mart's internal policies.

We find the circuit court properly granted summary judgment as to these alternative causes of action because Wal–Mart owed no duty to the victim. It is clear Wal–Mart had no general duty to control the conduct of the victim's father or warn the victim of the danger of the sexual abuse. Further, none of the exceptions enumerated in *Faile* apply here. Wal–Mart had no special relationship with either the victim or his father because it did not have the ability to monitor, supervise, or control either. *Doe v. Marion, supra.* Wal–Mart did not

negligently or intentionally create the risk of the father's sexual abuse. Lastly, as discussed above, Wal–Mart's duty to report under the Reporter's Statute cannot give rise to civil liability.

We also hold Wal–Mart did not voluntarily undertake a duty. It is undisputed that Wal–Mart created an internal policy that was subsequently violated when the photo technician destroyed the photos and did not inform the store manager or keep them as evidence. However, this internal policy cannot be said to constitute the voluntary undertaking of a duty. Rather, it could simply serve as evidence of the standard of care, once that duty was established by law. *See Madison, supra.*

## CONCLUSION

We find the circuit court's grant of summary judgment in favor of Wal–Mart was proper because there can be no civil liability under the Reporter's Statute and Wal–Mart owed no duty to the victim. Accordingly, the order of the circuit court is

**AFFIRMED.**

TOAL, C.J., BEATTY, KITTREDGE and HEARN, JJ., concur.