725 S.E.2d 476

Karen COLE, as Guardian ad litem for David C., Appellant,

v.

BOY SCOUTS OF AMERICA, Indian Waters Council, Pack 48, Faith Presbyterian Church and Jeff Wagner, Defendants,

of whom Jeff Wagner is, Respondent.

David Cole and Karen Cole, Appellants

v.

Boy Scouts of America, Indian Waters Council, Pack 48, Faith Presbyterian Church and Jeff Wagner, Defendants,

of whom Jeff Wagner is, Respondent.

No. 27072.

Supreme Court of South Carolina.

Heard Oct. 5, 2011.
Decided Dec. 5, 2011.
Rehearing Denied Jan. 11, 2012.

248

Arthur K. Aiken, of Aiken & Hightower, P.A., of Columbia, for Appellants.

John M. Grantland, Alice P. Adams, and Ashley B. Stratton, of Murphy & Grantland, of Columbia, for Respondent.

Justice HEARN.

David Cole, the primary appellant, was injured while catching during a father-son game of softball at a Cub Scout outing when a baserunner collided with him at home plate. He brought this action alleging negligence and recklessness against the baserunner and the sponsors of the game. The circuit court judge granted summary judgment to the baserunner, and we affirm.

## FACTUAL/PROCEDURAL BACKGROUND

In March 2004, David Cole and his son, David Jr., who was a member of Cub Scout Pack 48, attended a Cub Scout family camping trip. During the course of the trip, Cole and David Jr. participated in a father-son, pick-up softball game. Jeff Wagner and his son were also on the camping trip and were

playing on the opposite team from the Coles in the softball game. Although one of the older boys had been playing catcher, Cole took over the position because he was afraid the boy would be hit by a foul ball or by the batter.

Neither of the teams kept score, and during each inning everyone was allowed to bat. Apparently, some of the fathers were playing too aggressively in the minds of some participants and hitting the ball with full swings. One of the Scout leaders, Keith Corley, briefly interrupted the game and asked them to play more safely, fearing that they were putting the scouts in danger.

During Wagner's next turn at bat, he hit a double. Another father came up to bat after him and hit the ball into the outfield, potentially allowing Wagner to score. As Wagner reached home plate, he collided with Cole, who had moved on top of the plate, thereby placing his body directly in the baseline. Wagner was running so fast that he was unable to stop or change directions in time to avoid Cole. Upon impact, Wagner flipped in the air and landed on a bat, breaking a rib. Cole suffered a closed head injury and was rendered semiconscious. He then began bleeding and went into convulsions. Cole had to be airlifted to Palmetto Richland Hospital where he spent two days in the intensive care unit. David Jr. witnessed the entire accident in fear that his father was going to die.

Cole and his wife Karen, personally and as guardian ad litem for David Jr. (collectively, Appellants), brought this action against Wagner, the Boy Scouts of America, Indian Waters Council of the Boy Scouts of America, Pack 48, and Faith Presbyterian Church for personal injury, loss of consortium, and negligent infliction of emotional distress. Wagner [1] moved for summary judgment, contending he owed no duty to Cole because Cole assumed the risks incident to the sport of softball. The circuit court granted Wagner's motion, and this appeal followed.

## STANDARD OF REVIEW

An appellate court reviewing a grant of summary judgment applies the same standard used by the trial court.

---

1. The Coles settled with all the other defendants.

*Doe ex rel. Doe v. Wal–Mart Stores, Inc.*, 393 S.C. 240, 244, 711 S.E.2d 908, 910 (2011). Summary judgment is appropriate if "there is no genuine issue as to any material fact." Rule 56(c), SCRCP. In determining whether a triable issue of material fact exists, the Court must construe all facts and inferences in the light most favorable to the non-movant. *Wogan v. Kunze*, 379 S.C. 581, 585, 666 S.E.2d 901, 903 (2008) "In order to withstand a motion for summary judgment in cases applying the preponderance of the evidence burden of proof, the non-moving party is only required to submit a mere scintilla of evidence." *Turner v. Milliman*, 392 S.C. 116, 122, 708 S.E.2d 766, 769 (2011). "A motion for summary judgment on the basis of the absence of a duty is a question of law for the court to determine." *Oblachinski v. Reynolds*, 391 S.C. 557, 560, 706 S.E.2d 844, 845 (2011). If a legal duty is established, whether the defendant breached that duty is a question of fact. *Singletary v. S.C. Dept. of Educ.*, 316 S.C. 153, 157, 447 S.E.2d 231, 233 (Ct.App.1994).

## LAW/ANALYSIS

■ Appellants argue that the circuit court erred in finding Cole assumed the risk of his injury by engaging in a game of softball because Wagner's conduct was outside the scope of the game. Specifically, Appellants argue Wagner's behavior was inconsistent with the ordinary risks of softball because the game was intended to be noncompetitive, Wagner violated a rule of the game, and he acted recklessly. We disagree.

■ "Primary implied assumption of risk arises when the plaintiff impliedly assumes those risks that are *inherent* in a particular activity." *Davenport v. Cotton Hope Plantation Horizontal Prop. Regime*, 333 S.C. 71, 81, 508 S.E.2d 565, 570 (1998). The doctrine of primary implied assumption of risk "goes to the initial determination of whether the defendant's legal duty encompasses the risk encountered by the plaintiff." *Id.* To establish a claim for negligence, a plaintiff must first show that the defendant owed a duty of care to the plaintiff. *Doe*, 393 S.C. at 246, 711 S.E.2d at 911. Absent a legally recognized duty, the defendant in a negligence action is entitled to a judgment as matter of law. *Hurst v. East Coast Hockey League*, 371 S.C. 33, 37, 637 S.E.2d 560, 562 (2006).

In *Hurst*, we considered the application of assumption of risk in a sports context. The plaintiff was injured when a hockey puck struck him in the face while he was watching a professional hockey game. 371 S.C. at 36, 637 S.E.2d at 561. The plaintiff sued the hockey team for negligence, and we affirmed the grant of summary judgment for the team finding that "a flying puck is inherent to the game of hockey and is also a common, expected, and frequent risk of hockey." *Id.* at 38, 637 S.E.2d at 562–63. We held that by attending the hockey game, the plaintiff implicitly assumed the risks inherent in the sport and the defendant had no duty to protect him from those risks. *Id.* at 38, 637 S.E.2d at 562.

Appellants argue that *Hurst* is factually distinguishable, and therefore inapplicable, since the plaintiff in *Hurst* was a spectator and the game was being played by a professional team. Both of these arguments are unavailing. We acknowledge that the duty owed by a player to a spectator may differ in form to a duty owed to a coparticipant in a sport, but only because a duty owed to a spectator would be greater. Thus, if anything, by playing the game, Cole assumed a greater risk than the plaintiff in *Hurst* who was a mere spectator.

Furthermore, it is legally inconsequential that *Hurst* involved a professional sport. *Hurst* contained no qualifying language to limit its holding to the professional sports context, and we take this opportunity to emphasize that the critical fact is not the level of play, but the nature of the sport itself. *See Marchetti v. Kalish*, 53 Ohio St.3d 95, 559 N.E.2d 699, 702 (1990) ("Whether the activity is organized, unorganized, supervised or unsupervised is immaterial to the standard of liability."). A risk inherent in a sport can be found at any level of play, possibly more so in a non-professional arena where the players engage with less skill and athleticism. While Cole was playing a casual game in which the teams did not even keep score, he was still playing softball, which is a contact sport.[2]

---

2. Numerous courts across the country have similarly acknowledged softball is a contact sport. *See, e.g., D'Agostino v. Easton Sports, Inc.*, No. X04HHDCV085026631S, 2010 WL 5492731, at *3 (Conn.Super.Ct. Dec. 9, 2010) (unpublished decision) (noting that "softball is a contact sport" (internal citation omitted)); *Gonzalez*, 196 Ill.Dec. 165, 629 N.E.2d at 715 (finding softball is a contact sport in a case involving an employee pick-up game, noting that "physical contact is part of the

Where a person chooses to participate in a contact sport, whatever the level of play, he assumes the risks inherent in that sport. *See Landrum v. Gonzalez*, 257 Ill.App.3d 942, 196 Ill.Dec. 165, 629 N.E.2d 710, 714 (1994) (noting that the relative inquiry into the standard of care is whether the sport is a contact sport, which should be determined "by examining the objective factors surrounding the game itself, not on the subjective expectations of the parties"); *Keller v. Mols*, 156 Ill.App.3d 235, 108 Ill.Dec. 888, 509 N.E.2d 584, 586 (1987) ("[I]n determining whether a sports participant may be liable for injuries to another player caused by mere negligence, the relevant inquiry is whether the participants were involved in a contact sport, not whether they were organized and coached."). Therefore by playing softball, Cole assumed those risks that are integral to the sport of softball, which includes the risk of a collision at home plate.

Appellants accordingly contend that Wagner violated a rule of softball by "running over the catcher during a play at home plate," and therefore his conduct was outside the scope of the game. However, the risk of someone violating a rule of the game is one of the risks taken when engaging in a sport. *See Landrum*, 196 Ill.Dec. 165, 629 N.E.2d at 714 (citing *Oswald v. Township High Sch. Dist. No. 214*, 84 Ill.App.3d 723, 40 Ill.Dec. 456, 406 N.E.2d 157, 160 (1980)) (noting that "rule infractions, deliberate or unintentional, are virtually inevitable in contact games" and thus a different standard of care in such sports is justified). If no one ever violated the rules, then there would be no need for penalty shots in basketball, a penalty box in hockey, or flags on the field in football. Collisions at home plate are common, mainly because catchers often attempt to keep a runner from scoring by blocking the plate with their body. Even if a rule prohibits running into

game"); *Feld v. Borkowski*, 790 N.W.2d 72, 79 (Iowa 2010) (concluding that softball is a contact sport and noting that this was the conclusion of other courts that have considered this question); *Crawn v. Campo*, 136 N.J. 494, 643 A.2d 600, 606 (1994) (applying the standard of care applied for contact sports across most states to softball); *Licitra v. Inc. Vill. of Garden City*, No. 18449/02, 2004 WL 2034999, at *2 (N.Y.Sup. May 25, 2004) (unpublished opinion) ("The risk of injury is clearly inherent in contact sports such as softball."); *Kalan v. Fox*, 187 Ohio App.3d 687, 933 N.E.2d 337, 341–42 (2010) (noting that physical contact is inevitable in contact sports like softball).

the catcher, that fact alone is insufficient evidence to show the injury resulting from the violation of the rule was not inherent in the sport.

As a final matter, Appellants argue that even if mere negligence may be outside the duty of care, Wagner's conduct was reckless and therefore outside the scope of risks assumed in the game of softball. "[R]ecklessness or willfulness may be inferred from conduct so grossly negligent that a person of ordinary reason and prudence would then have been conscious of the probability of resulting injury." *Yaun v. Baldridge*, 243 S.C. 414, 419, 134 S.E.2d 248, 251 (1964). "[R]ecklessness implies the doing of a negligent act knowingly ... [or] the conscious failure to exercise due care." *Id.* (quoting *State v. Rachels*, 218 S.C. 1, 8, 61 S.E.2d 249, 252 (1950)). "Due care" can be defined as "that degree of care which a person of ordinary prudence and reason would exercise under the same circumstances." *Berberich v. Jack*, 392 S.C. 278, 287, 709 S.E.2d 607, 612 (2011) (quoting *Hart v. Doe*, 261 S.C. 116, 122, 198 S.E.2d 526, 529 (1973)).

Even assuming, arguendo, that Wagner's conduct could be characterized as reckless, it was not so reckless as to involve risks outside the scope of softball. The likelihood of someone running too fast to stop or playing more aggressively than anticipated is part of the competitive atmosphere of athletics. Almost all contact sports, especially ones that require protective gear as part of their equipment, involve conduct that a reasonably prudent person would recognize may result in injury. To the extent these risks inhere in the sport involved, we hold some recklessness by coparticipants in a contact sport must be assumed as part of the game. Accordingly, a player assumes the risk of ordinary recklessness committed within the course of the game.

We emphasize that this holding is limited to recklessness committed within the scope of the game and does not include intentional conduct by a coparticipant of a sport, or conduct so reckless as to be outside the scope of the game.[3] Even within

---

3. While other courts have carved out exceptions for both reckless and intentional conduct, a viable recklessness claim must embrace conduct inconsistent with the game. *See Rudzinski v. BB*, No. 0:09–1819–JFA, 2010 WL 2723105, at *3 (D.S.C.2010) (finding one boy had not acted

the context of a contact sport, players owe reciprocal duties to not intentionally injure each other. Cole does not allege that Wagner's conduct was intentional nor does he allege such recklessness as would fall outside the scope of the game of softball. Thus, Wagner's conduct fell within the duty of care he owed to Cole as a coparticipant in the game.

## CONCLUSION

Based on the foregoing, we affirm the circuit court's order granting summary judgment in favor of Wagner.

TOAL, C.J., BEATTY and KITTREDGE, JJ., concur.

PLEICONES, J., concurring in a separate opinion.

Justice PLEICONES.

I concur in the decision to affirm the grant of summary judgment because I would find that Wagner owed no duty to Cole under these circumstances, relying on the doctrine of implied primary assumption of the risk. *Hurst v. East Coast Hockey League*, 371 S.C. 33, 637 S.E.2d 560 (2006). I also note that I am not convinced that a game of pick-up softball is a contact sport.

---

recklessly in hitting another boy with the backswing of his golf club because he had not "engaged in conduct so reckless as to be totally outside the range of the ordinary activity involved in the sport of golf"); *Knight v. Jewett*, 3 Cal.4th 296, 11 Cal.Rptr.2d 2, 834 P.2d 696, 710 (1992) (failing to find defendant liable for recklessness for knocking over plaintiff and stepping on her hand during a game of touch football, stating that defendant's conduct was not "so reckless as to be totally outside the range of ordinary activity involved in the sport"); *Bourque v. Duplechin*, 331 So.2d 40, 42–43 (La.Ct.App.1976) (finding defendant liable under a theory of recklessness where he had run several feet outside the baseline to collide with the second baseman in an effort to break up a double play and noting that such unsportsmanlike behavior was not incidental to playing softball).