**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────────

**No. 25-1437**

───────────────

MICHAEL KALOS,

        Plaintiff – Appellant,

    v.

CEDAR FAIR SOUTHWEST, INC., d/b/a Carowinds; CRAIG KENNINGTON;
TIM BENZ,

        Defendant – Appellees.

───────────────

Appeal from the United States District Court for the District of South Carolina, at Rock
Hill.  Mary G. Lewis, District Judge.  (0:22-cv-01114-MGL)

───────────────

Argued:  January 28, 2026              Decided:  June 23, 2026

───────────────

Before KING, AGEE, and HEYTENS, Circuit Judges.

───────────────

Affirmed by unpublished opinion.  Judge King wrote the opinion, in which Judge Agee
and Judge Heytens joined.

───────────────

**ARGUED:**  John Elliott Parker, Jr., PARKER LAW GROUP, LLP, Hampton, South
Carolina, for Appellant.  Amie Carol Sivon, RAGSDALE LIGGETT, PLLC, Raleigh,
North Carolina, for Appellees.  **ON BRIEF:**  Ronnie L. Crosby, PARKER LAW GROUP,
LLP, Hampton, South Carolina; David L. Kwass, SALTZ, MONGELUZZI &
BENDESKY, P.C., Philadelphia, Pennsylvania, for Appellant.  William W. Pollock,
RAGSDALE LIGGETT, PLLC, Raleigh, North Carolina, for Appellees

───────────────

Unpublished opinions are not binding precedent in this circuit.

KING, Circuit Judge:

In this appeal from the District of South Carolina, plaintiff Michael Kalos challenges the district court's adverse March 2024 award of summary judgment to the defendants in these proceedings — that is, Cedar Fair Southwest, Inc., doing business as Carowinds (hereinafter "Carowinds"), Craig Kennington, and Tim Benz (collectively "defendants"). *See Kalos v. Cedar Fair Sw., Inc.*, No. 0:20-cv-01114 (D.S.C. Mar. 25, 2024), ECF No. 137 (the "Summary Judgment Ruling"). Therein, the court entered judgment in favor of the defendants on Kalos' claim of negligence under South Carolina law, which arose out of a March 2019 visual inspection that Kalos conducted on a Carowinds amusement park ride called the "Windseeker." On appeal, Kalos maintains that the Summary Judgment Ruling erred in concluding that the defendants owed no duty to Kalos, and that the defendants' alleged conduct did not proximately cause his injuries. As explained herein, we reject each of Kalos' appellate contentions and affirm the judgment of the district court.

I.

A.

As background, Carowinds operates an amusement park in and near Charlotte, North Carolina, and Rock Hill, South Carolina.[1]  Relevant here, in February 2019,

---

[1] We accept and recite herein the relevant facts — as the district court was obliged to do — in the light most favorable to Kalos, as the nonmoving party, with respect to the defendants' summary judgment motion on Kalos' claim for negligence under South Carolina law. *See, e.g., Palmer v. Liberty Univ.*, 72 F.4th 52, 62 (4th Cir. 2023).

2

Carowinds contracted with a company called Dynamic Attractions ("Dynamic") to perform a "Visual Inspection" of, inter alia, the wire rope on the Windseeker. *See* J.A. 396-98.[2] The Windseeker is a tower structure that stands at approximately 92 meters tall with a circle of 32 twin-seat gondolas that rotate around the tower. Each gondola is connected to the central tower by a bar. Additionally, there are 12 wire ropes that connect the top of the tower and run through the center of the tower. And those ropes operate through the use of a drive motor and counterweights, with each passing through "pulleys" along the route.



*See* J.A. 499, 501, 504 (three photographs of Windseeker ride at Carowinds).

Unbeknownst to Carowinds until the day of the visual inspection, Dynamic had subcontracted its obligations to visually inspect the Windseeker to a corporate entity called

---

[2] Citations herein to "J.A. ___" refer to the contents of the Joint Appendix filed by the parties in this appeal.

"TechKnowServ."[3]  For his part, plaintiff Kalos was employed by TechKnowServ from 2017 to 2020.  During that time, Kalos served as a "nondestructive testing professional" for the company.  *See, e.g.*, J.A. 654-57.  Kalos was assigned by TechKnowServ to conduct the visual inspection of the Windseeker.  Although Kalos had never performed a visual steel cable inspection, he had previously inspected steel cables on other amusement park rides by use of various mechanical devices.  Of relevance here, prior to conducting the visual inspection of the Windseeker, Kalos was trained by the owner of TechKnowServ — a man named Hay — to conduct the inspection.  Specifically, during an hour-long training session with Kalos, Hay instructed Kalos to conduct the visual inspection of the Windseeker by cupping a leather-gloved hand on the ride's moving wire rope, while also feeling for changes in the diameter of the wires or other abnormalities associated therewith.

Early in the morning on March 6, 2019, Kalos — who was, at all relevant times, assisted by defendants Kennington and Benz, each of whom were mechanics for defendant Carowinds — commenced his inspection of the Windseeker.  For their part, Kennington and Benz controlled the operation of the Windseeker — including by governing the speed of the ride's wire rope at the time it was being examined by Kalos — for the duration of the inspection, which lasted approximately an hour and a half.  In accordance with the

---

[3] Specifically, TechKnowServ contracted with Dynamic to perform a "Visual Inspection of Observation Tower and Windseeker Cables" at Carowinds.  *See* J.A. 72. Dynamic further informed TechKnowServ that a visual inspection was needed, but Dynamic did not otherwise advise TechKnowServ how to perform such an inspection.

4

training that had been provided by Hay, Kalos conducted the inspection by lightly gripping the moving wire rope on the Windseeker with his right leather-gloved hand.

After Kalos had completed an inspection of approximately "two or three" of the Windseeker's wire ropes, Kennington and Benz heard screaming over a Carowinds radio system. *See* J.A. 665. Kalos' leather glove had been caught in one of the Windseeker's wire ropes, and his hand was resultingly pulled into the ride's pulley system. As a result of the incident, Kalos sustained gruesome and widespread injuries to his right hand.

B.

In March 2022, Kalos filed this negligence lawsuit against the defendants in the York County Court of Common Pleas, which the defendants timely removed to the District of South Carolina.[4] In June 2022, Kalos filed an amended complaint, which thereupon became the operative complaint in these federal court proceedings. *See Kalos v. Cedar Fair Sw., Inc.*, No. 0:20-cv-01114 (D.S.C. June 10, 2022), ECF No. 41 (the "Complaint"). By the Complaint, Kalos alleges that the "loss of [his] hand was due and proximately caused by the negligent and reckless conduct of" the defendants. *See* Complaint ¶ 15.

Following the completion of discovery — which included the taking of several depositions and the submission of competing expert reports — the defendants jointly moved for summary judgment in July 2023 on Kalos' claim of negligence. By its Summary Judgment Ruling of March 2024, the district court entered judgment in favor of the

---

[4] In these circumstances, removal was proper because the federal court could exercise diversity jurisdiction given diversity of the parties and a satisfactory amount in controversy. *See* 28 U.S.C. § 1332.

5

defendants.  Therein, the court addressed and resolved two discrete questions:  "[W]hether Kalos has established the duty and proximate cause elements of his negligence claim," pursuant to the applicable law of the Palmetto State.  *See* Summary Judgment Ruling 7.

As to the duty-of-care negligence element, the Summary Judgment Ruling applied South Carolina law and determined that the defendants owed no duty to Kalos "to eliminate hazardous conditions and to warn of hidden dangers of which Carowinds had knowledge," nor to "implement proper safety protocols and . . . warn Kalos of latent hazard such as the potential for an unseen abnormality in the wire rope to draw his hand into a sheave during the inspection" of the Windseeker.  *See* Summary Judgment Ruling 8 (citation modified). On that score, the Summary Judgment Ruling first concluded that, because "Carowinds hired Dynamic Attractions to do a *visual inspection* of the cables on the Windseeker" — which resulted in Dynamic subcontracting its obligations to Kalos' employer, TechKnowServ — "Kalos's touching the [wire] cables obviously falls well outside what the words in the quote and contract call for, which was a mere *visual inspection* of the cables on the Windseeker."  *See* Summary Judgment Ruling 9-10 (emphasis added).

Second, the district court resolved that there was "plenty of evidence showing [d]efendants were unaware that Kalos's visual inspection . . . would entail his touching the rope on it, and that doing so was ill advised."  *See* Summary Judgment Ruling 10.  Third, relying on "well-settled South Carolina law," the court explained that, because "'[a]n independent contractor is one who, exercising an independent employment, contracts to do a piece of work according to his own methods, without being subject to the control of his employer except as to the result of his work,'" Carowinds — which "contracted with

6

[Dynamic] to perform the visual wire rope inspection of the Windseeker" — "expected a person brought in to do a wire rope inspection would understand how the cables operated, how to conduct the inspection, and how to not get hurt by the cables." *Id.* at 12 (quoting *Creighton v. Coligny Plaza Ltd. P'ship*, 512 S.E.2d 510, 521 (S.C. Ct. App. 1998)).

Moving on, the Summary Judgment Ruling analyzed whether "Kalos had established the proximate cause element of his negligence claim." *See* Summary Judgment Ruling 12. To that end, the district court made four determinations as to why Kalos' injuries were not proximately caused by the defendants' conduct:

(1) The defendants' "alleged failure to abide by [Occupational Safety and Health Administration ("OSHA")] regulations, internal policies, and industry standards" was not a proximate cause of the injuries sustained by Kalos because he "failed to submit any evidence showing any alleged violations of . . . OSHA regulations resulted in his injuries, *id.* at 14;

(2) The defendants' "alleged failure to implement certain safety protocols" did not proximately cause the injuries, given Kalos' improper training by Hay "to touch the wire during the [visual] inspection," *id.* at 15;

(3) The defendants' "alleged failure to warn Kalos of the dangerous condition of the wire ropes" on the Windseeker also did not cause Kalos' injuries because of the defendants' understanding that Kalos was to be conducting a visual inspection of the Windseeker, *id.* at 16-17; and

(4) The "operating speed" of the Windseeker, controlled by defendants Kennington and Benz, did not cause Kalos' injuries because "Kalos never present[ed] any evidence showing a slower speed would have prevented his injuries, or what a safe speed would have been," *id.* at 18-19.[5]

---

[5] We observe that the Summary Judgment Ruling also assessed whether the district court possessed subject-matter jurisdiction "in accordance with the statutory employee doctrine." *See* Summary Judgment Ruling 4. According to the district court, because Kalos was not a "statutory employee" of Carowinds under South Carolina law, he was not obliged to pursue relief exclusively under the Palmetto State's Workers' Compensation Act. As this Court later held, however, whether or not the statutory-employee doctrine (Continued)

* * *

In April 2024, Kalos moved for reconsideration of the Summary Judgment Ruling pursuant to Federal Rule of Civil Procedure 59(e), but the district court denied such relief by Order of March 2025.  *See Kalos v. Cedar Fair Sw., Inc.*, No. 0:20-cv-01114 (D.S.C. Mar. 24, 2025), ECF No. 151 (the "Reconsideration Ruling").  Kalos then timely noted this appeal from the Summary Judgment Ruling and the Reconsideration Ruling, and we possess final decision jurisdiction pursuant to 28 U.S.C. § 1291.

II.

Our Court reviews de novo an award of summary judgment.  *See, e.g., Tederick v. LoanCare, LLC*, 168 F.4th 154, 162 (4th Cir. 2026); *Palmer v. Liberty Univ., Inc.*, 72 F.4th 52, 62 (4th Cir. 2023).  To that end, summary judgment is only appropriate if — viewing the facts in the light most favorable to the nonmoving party (here, Kalos) — the moving parties (that is, the defendants) have demonstrated that "'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"  *See FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013) (quoting Fed. R. Civ. P. 56(a)).

---

applies has no impact on a federal court's subject-matter jurisdiction.  *See Wideman v. Innovative Fibers LLC*, 100 F.4th 490, 492 (4th Cir. 2024).  And because neither of the parties raise any issues about that doctrine on appeal, we do not consider it.

8

III.

As discussed above, the crux of these proceedings hinges on the question of whether the defendants' conduct surrounding the March 2019 visual inspection of the Windseeker at Carowinds amounted to negligence toward Kalos. Under South Carolina law, "[a] plaintiff, to establish a cause of action for negligence, must prove the following four elements: (1) a duty of care owed by defendant to plaintiff; (2) breach of that duty by a negligent act or omission; (3) resulting in damages to the plaintiff; and (4) damages proximately resulted from the breach of duty." *See Thomasko v. Poole*, 561 S.E.2d 597, 599 (S.C. 2002). On appeal, as they did in the district court, the parties focus on the first and fourth negligence elements: whether the defendants owed a legally recognized duty to Kalos, and whether his injuries were proximately caused by the defendants' conduct.

For his part, Kalos maintains that the defendants each "had a duty to undertake reasonable efforts to provide Kalos with a safe place to conduct the inspection," and that "there is [otherwise] evidence in the record supporting that [the defendants'] acts and omissions proximately caused Kalos' injury." *See* Br. of Appellant 38, 52. In these circumstances, however, having carefully assessed the record on appeal — as well as the various and thorough appellate submissions of the parties, along with the able arguments presented by the lawyers at the January 2026 oral argument — we reject each of Kalos' appellate contentions and affirm the judgment of the district court. And in making that determination, we are satisfied to agree with and adopt the well-crafted and reasoned analysis of both the Summary Judgment Ruling and the Reconsideration Ruling.

9

Put simply, we are of opinion that the defendants owed no "legally recognized duty" to Kalos under South Carolina law, such that they are entitled to an award of judgment as a matter of law thereon. *See Cole v. Boy Scouts of Am.*, 725 S.E.2d 476, 478 (S.C. 2011) (recognizing that "[a]bsent a legally recognized duty, the defendant in a negligence action is entitled to a judgment as matter of law"). Separately, we also agree with the district court and the defendants that the severe injuries sustained by Kalos in connection with the March 2019 inspection of the Windseeker were not proximately caused by the defendants' conduct, such that they are entitled to an award of summary judgment on that basis as well.

IV.

Pursuant to the foregoing, we are content to reject each of Kalos' appellate contentions and affirm the judgment of the district court.

*AFFIRMED*