[No. 42471-8-I. Division One. September 20, 1999.]

LEWIS W. BROWN, *Appellant*, v. STEVENS PASS, INC.,
*Respondent*.

*Todd Whitney Gardner* of *Swanson Gardner, P.S.*, for appellant.

*Ruth Nielsen* of *Nielsen Law Office, Inc., P.S.*, for respondent.

KENNEDY, C.J. — Lewis W. Brown filed a personal injury action against Stevens Pass, Inc., to recover damages for injuries he sustained in colliding with a fixed metal post embedded in concrete that supported a metal snow fence at the Stevens Pass ski resort. Relying on a provision in Washington's ski statute, RCW 70.117.020(8), and *Scott v. Pacific West Mountain Resort*, 119 Wn.2d 484, 501, 834 P.2d 6 (1992), the trial court dismissed Brown's complaint. We reverse and remand. No provision in RCW 70.117 per se immunizes ski resorts from liability when skiers collide with equipment placed on the mountain by the resort, and a rational trier of fact could reasonably conclude that the ski resort negligently failed to pad the fence posts, thereby enhancing Brown's risk of injury.

## FACTS

On February 7, 1994, Lewis W. Brown was downhill ski-

ing at the Stevens Pass ski resort. Brown, who describes himself as an "advanced" skier, was skiing down the South Divide Run, which Brown characterizes as "not steep" and "not difficult." Clerk's Papers at 13. Still, Brown explained that he lost control and collided with a snow fence:

> [S]uddenly I lost an edge on the ice underneath the powder. And I did not fall down but I did change direction and had lost control . . . . I was trying to regain control . . . . I think I was in the process of falling. It was like I was trying to stop. I saw the fence and I thought, well, if I hit the fence, you know, I'll just, it will just catch me, and like you see in the Olympics, the guys hit the fence and they get up and they go. I remember that flashing through my mind as a possible scenario. But I was trying to stop.

*Id.* at 14. He maintains that his "speed was slow enough so that [he] thought contact with any of the types of fences [he] had seen at ski areas could not possibly result in any harm." *Id.* at 67. To his surprise, the fence was metal and its posts were embedded in concrete. The collision caused injuries to Brown's right femur and left tibia.

The snow fence was located along a windy ridge to keep snow on the South Divide Run. Without the fence, the wind would blow all the snow off the ridge, down to dirt and rocks. The South Divide Run provides access to skiing in Mill Valley on the back side of the mountain. Without the fence, the resort could not open Mill Valley to skiing. Due to the strength of the wind on the ridge, it was necessary to embed the fence posts in concrete—indeed, the wind and the weight of the snow exert so much pressure on the fence that the metal posts bend under the pressure and must be replaced from time to time. Thus, temporary fencing or a more flexible fence would be destroyed and would not be strong enough to hold the snow on the run. The fence had been in place for 10 years at the time of summary judgment. During that time, over a million skiers had safely negotiated the run. Brown was the first skier to be injured by colliding with the fence.

On May 20, 1996, Brown filed a complaint for damages

against Stevens Pass, Inc., alleging that the ski resort "failed to act with reasonable care and was negligent" for constructing a hazardous fence, failing to warn skiers of this hazard, and failing to protect skiers from it. *Id.* at 3-5. On February 20, 1998, Stevens Pass, Inc. moved for summary judgment dismissal of Brown's complaint, contending that Stevens Pass "did not breach any duty owed to [Brown]." *Id.* at 27.

Relying on a provision in Washington's ski statute, RCW 70.117.020(8), and *Scott v. Pacific West Mountain Resort*, 119 Wn.2d at 501 ("While participants in sports are generally held to have impliedly assumed the risks inherent in the sport, such assumption of risk does not preclude a recovery for negligent acts which unduly enhance such risks."), the trial court concluded that "the collision with the obvious stationary object (the fence) was not unduly enhanced by any action of [Stevens Pass, Inc.]." Clerk's Papers at 161. Accordingly, the court granted Stevens Pass, Inc.'s motion, dismissing Brown's complaint. Brown appeals.

## DISCUSSION

■ Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c). "The motion will be granted, after considering the evidence in the light most favorable to the nonmoving party, only if reasonable persons could reach but one conclusion." *Reynolds v. Hicks*, 134 Wn.2d 491, 495, 951 P.2d 761 (1998). "When reviewing a summary judgment order, an appellate court engages in the same inquiry as the trial court." *Id.*

### The Skier's Assumption of the Risk

■■ "Skiing is a risky sport that causes many injuries." *Shukoski v. Indianhead Mountain Resort, Inc.*, 166 F.3d 848, 850 (6th Cir. 1999). "[T]hose who participate in sports

or amusement subjectively assume known risks of being hurt." *Codd v. Stevens Pass, Inc*, 45 Wn. App. 393, 401, 725 P.2d 1008 (1986). In doing so, each participant impliedly "assumes the dangers that are *inherent in* and *necessary to* the particular sport or activity." *Scott*, 119 Wn.2d at 501; *see Codd*, 45 Wn. App. at 402 ("[S]portspersons do not assume the risk of unobvious dangers[.]'").

### 1. Common-Law Assumption of the Risk

■ Under the implied primary assumption of the risk common-law doctrine, the "evidence must show the plaintiff (1) had full subjective understanding (2) of the presence and nature of the specific risk, and (3) voluntarily chose to encounter the risk." *Kirk v. Washington State Univ.*, 109 Wn.2d 448, 453, 746 P.2d 285 (1987); *see also* W. PAGE KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 68, at 487 (5th ed. 1984) ("[The participant] must know that the risk is present, and he [or she] must further understand its nature; and . . . his [or her] choice to incur it must be free and voluntary."). "In the usual case, his [or her] knowledge and appreciation of the danger will be a question for the jury; but where it is clear that any person in his [or her] position must have understood the danger, the issue may be decided by the court." PROSSER AND KEETON § 68, at 489 (footnotes omitted).

Assumption of the risk in the sports participant context "is in reality the principle of no duty—hence no breach and no underlying cause of action." *Codd*, 45 Wn. App. at 402. "A defendant simply does not have a duty to protect a sports participant from dangers which are an inherent and normal part of a sport." *Scott*, 119 Wn.2d at 498.

### 2. Washington's Ski Statute

■ In 1977, our Legislature passed RCW 70.117, which imposes duties on skiers and ski resorts. Insofar as here relevant, the statute provides that "[e]very person shall maintain control of his or her speed and course at all times, and shall stay clear of any snow grooming equipment, any vehicle, any lift tower, and any other equipment on the

mountain." RCW 70.117.020(3). Further, "[a] person shall be the sole judge of his or her ability to negotiate any trail, run, or uphill track and no action shall be maintained against any operator by reason of the condition of the track, trail, or run unless the condition results from the negligence of the operator." RCW 70.117.020(4). "Because of the inherent risks in the sport of skiing all persons using the ski hill shall exercise reasonable care for their own safety. However, the primary duty shall be on the person skiing downhill to avoid any collision with any person or object below him or her. " RCW 70.117.020(6). And finally, "[a]ny person on foot or on any type of sliding device shall be responsible for any collision whether the collision is with another person or with an object." RCW 70.117.020(8).

 In *Codd*, this court observed that Washington's ski statute "modifies, but is generally consistent with, the common law." *Codd*, 45 Wn. App. at 397; *accord Scott*, 119 Wn.2d at 500. Although the statute imposes both primary and secondary duties on skiers, it "does not purport to relieve ski operators from all liability for their own negligence." *Id.*; *accord Codd*, 45 Wn. App. at 400. Further, ski resorts owe a duty to skiers, who are business invitees, to provide "reasonably safe facilities." *Scott*, 119 Wn.2d at 502. The resorts must "discover dangerous conditions through reasonable inspection, and repair that condition or warn the invitees, unless it is known or obvious." *Id.* at 500; *see also Codd*, 45 Wn. App. at 400 (explaining that a ski resort has a duty to warn skiers of latent hazards). The rationale for this rule is that invitees are reasonably expected to discover and protect themselves from known or obvious dangers. *See* Prosser and Keeton § 61, at 427.

In sum, "[w]hile participants in sports are generally held to have impliedly assumed the risks inherent in the sport, such assumption of risk does not preclude a recovery for negligent acts which unduly enhance such risks." *Scott*, 119 Wn.2d at 501; *see also Van Dyke v. S.K.I., Ltd.*, 67 Cal. App. 4th 1310, 79 Cal. Rptr. 2d 775, 779 (1998) ("[Ski resorts] generally do have a duty to use due care not to

increase the risks to a participant over and above those inherent in the sport.") (citation omitted). Further, "if the injury was caused by a combination of the inherent risks of skiing and operator negligence, the doctrine of comparative fault applies." *Scott*, 119 Wn.2d at 502.

In *Scott*, our Supreme Court addressed the risks assumed by a skier who collided with an unfenced, unpadded tow-rope shack located in close proximity to a race course. *Scott*, 119 Wn.2d at 499-504. The court cited Washington's ski statute generally, but did not discuss any of its specific provisions. *Id.* at 500. Instead, the court defined the issue as "whether all the risks which caused [plaintiff]'s injuries were inherent in the sport." *Id.* at 501. Relying on common-law assumption of the risk principles, the court concluded that "primary assumption of the risk in a sports setting does not include the failure of the operator to provide reasonably safe facilities." *Id.* at 502 (footnote omitted). The court found "evidence that could support a finding that the racecourse for beginning racers was placed dangerously close to an unfenced, unpadded, abandoned shed." *Id.* at 502. Thus, it concluded that "plaintiff's evidence raised genuine issues of material fact with regard to whether the [ski resort] acted negligently[.]" *Id.* at 503.

Stevens Pass, Inc., argues that RCW 70.117.020(3), (6), and (8), taken together, create a per se rule that skiers assume all risk of injury resulting from a collision with another person or with an object—notwithstanding the preservation, in RCW 70.117.020(4), of liability of the resort operator for conditions that result from the operator's negligence. We disagree with this contention. RCW 70.117-.020 (3), (6), and (8) are entirely consistent with principles of comparative negligence, and in conjunction with RCW 70.117.020(4) can mean only that resort operators remain liable for latent conditions of tracks, trails, and runs that result from operator-negligence, even though an injured skier's recovery may be reduced if he or she fails to maintain control and thereby collides with an object where the extent of the risk of injury is not known or obvious.

Our Supreme Court's discussion in *Scott* is helpful.

> One who participates in sports "assumes the risks" which are *inherent in the sport*. To the extent that a plaintiff is injured as a result of a risk inherent in the sport, the defendant has no duty and there is no negligence. Therefore, that type of assumption acts as a complete bar to recovery.

*Scott*, 119 Wn.2d at 498 (footnote omitted). Certainly, Brown assumed the risk that he would lose an edge on ice and lose control as a result; such risk is inherent in the sport of skiing. Moreover, we agree with the trial court that the fence was an obvious stationary object, and that Stevens Pass, Inc., did nothing to enhance the likelihood that Brown would lose an edge and lose control, thereby colliding with the fence. But that does not end the inquiry, for "primary assumption of the risk in a sports setting does not include the failure of the operator to provide reasonably safe facilities." *Id.* at 502 (footnote omitted).

Although the evidence is undisputed that in order for the snow fence here at issue to perform its intended function, its posts had to be embedded in concrete, and that over a million skiers had escaped injury arising from collisions with this particular fence in the 10 years since it was erected, a rational trier of fact could determine, based on evidence in the record or reasonable inferences arising therefrom, that the concrete was obscured by snow or the danger it posed in the event of collision with a concrete-embedded post was not otherwise apparent to skiers and that the resort operator's failure to pad the fence posts unduly enhanced the risk of injury to skiers.

As we have already noted, where injury is "caused by a combination of the inherent risks of skiing and operator negligence, the doctrine of comparative fault applies." *Id.* at 502 (citing *Jessup v. Mt. Bachelor, Inc.*, 101 Or. App. 670, 792 P.2d 1232 (1990)); *see also Marietta v. Cliff's Ridge, Inc.*, 385 Mich. 364, 373, 189 N.W.2d 208 (1971) (concluding that whether a ski facility was negligent in using 1½ inch sapling poles as slalom gate markers rather than

bamboo or fiber glass poles was a question of fact to be left to the jury), *cited in Scott*, 119 Wn.2d at 501. Here, whether the resort operator was negligent in failing to pad the concrete-embedded posts is a question of fact for the jury.

Although our Supreme Court did not discuss RCW 70.117.020 in any depth in *Scott*, the decision is entirely consistent with the statute, and the portions of the statute here relevant are, in turn, entirely consistent with the common-law principles that underlie the decision in *Scott*. *See Scott*, 119 Wn.2d at 503. Under RCW 70.117.020(4), a resort operator remains liable for the condition of tracks, trails, and runs resulting from negligence of the operator. This is another way of saying that ski resorts owe a duty to skiers, who are business invitees, "to provide reasonably safe facilities," *Scott*, 119 Wn.2d at 502, and to avoid enhancing the skier's risks. *Id.* at 501. Under RCW 70.117.020(3), (6), and (8), skiers who collide with obvious stationary objects, such as the fence in this case, because of difficult snow conditions, have assumed the risk of collision posed by the difficult snow conditions, but have not, thereby, assumed the risk of operator negligence, that is, the risk that the resort operator may have failed to take reasonable precautions to avoid or mitigate injury from a latent condition of which the skier has no knowledge. *See Scott*, 119 Wn.2d at 501-02.[1]

Although Brown admits that he collided with the fence, thereby breaching his statutory duty to "avoid any collision with any . . . object below him[,]" RCW 70.117.020(6), comparative fault attributed to him would reduce, rather than bar, his recovery. *See Scott*, 119 Wn.2d at 503.

---

[1]Under RCW 70.117.020(6), the primary duty is on the person skiing downhill to avoid collision with persons or objects below. RCW 70.117.020(8) makes persons "on foot or on any type of sliding device" responsible for collisions with persons or objects. It is unnecessary to our decision in this case to address whether skis are "sliding devices" within the meaning of RCW 70.117.020(8), in that our ruling would be the same whether or not skis are "sliding devices." Accordingly, we leave for another day the question of whether RCW 70.117.020(8) addresses skiers as well as (for example) sledders, inner-tube riders, and others who may be using the mountain for purposes other than downhill skiing.

Reversed and remanded for trial or such other disposition as shall be consistent with this opinion.

COLEMAN and BAKER, JJ., concur.

Review denied at 141 Wn.2d 1004 (2000).