130 P.3d 835 (2006)
132 Wash.App. 32
Delinda Middleton TAYLOR, formerly known as Delinda Middleton, an individual, Appellant,
v.
The BASEBALL CLUB OF SEATTLE, L.P., a Washington corporation, also doing business as Baseball of Seattle, Inc., a related Washington corporation, Respondent,
Washington Baseball Stadium Public Facilities District, a quasi-governmental entity; Jose Mesa and Mirla Mesa, individually and/or the marital community composed thereof; and Freddy Garcia, an individual, Defendants.
No. 55803-0-I.
Court of Appeals of Washington, Division 1.
February 27, 2006.
Publication Ordered March 22, 2006.
*836 Bradford James Fulton, Carter & Fulton PS, Everett, WA, for for Appellant.
Thomas Charles Stratton, Eklund Rockey Stratton PS, Seattle, WA, for Respondent.
DWYER, J.
¶ 1 During warm-up before a Seattle Mariners game, a pitcher accidentally threw a ball past his teammate into the stands, injuring Delinda Middleton Taylor. The trial court properly dismissed Taylor's negligence claim against the Mariners under the doctrine of implied primary assumption of risk. The court also properly admitted expert testimony from the Mariners' pitching coach. We affirm.

FACTS
¶ 2 On July 23, 2000, Delinda Middleton (now, Delinda Middleton Taylor) went to a Mariners game at Safeco Field with her then-boyfriend, Glen Taylor, and her minor sons, Gavin and Jordan. Their seats were in section 114, along the right field foul line and four rows up from the field. They arrived more than an hour before the game began to see the players warm up and to get their autographs. As they walked to their seats, Taylor saw that players were practicing nearby. Mariners pitcher Freddy Garcia was standing in front of section 114 on or about the right field line facing center field. He was throwing a ball back and forth with José Mesa, who stood in right center field approximately 120 feet away. As Taylor stood in front of her seat, she looked away from the field and a ball thrown by Mesa got past Garcia and struck Taylor in the face, causing serious injuries.
¶ 3 Taylor sued the Seattle Mariners, José Mesa, Mirla Mesa, and Freddy Garcia, asserting that they were liable for the allegedly negligent warm-up throw.[1]
¶ 4 The Mariners moved for summary judgment, claiming that (1) their duty to protect spectators from balls entering the *837 stands was satisfied by providing a protective screen behind home plate, and (2) Taylor was familiar with baseball and the inherent risk of balls entering the stands, and therefore assumed the risk of her injury.
¶ 5 With respect to their assumption of risk defense, the Mariners relied on the following facts. Taylor was a Mariners fan; she had gone to one game at the Kingdome, and she watched their games on television. Taylor knew professional ballplayers do not always catch the ball and that the ball could leave the field during a game. Also, Taylor's son Gavin played baseball for approximately six years and her son Jordan played for seven years. She went to almost all of their games, during which she saw balls enter the stands.
¶ 6 The Mariners' pitching coach Bryan Price testified that the pitchers warm up by playing "long toss," during which they throw the ball back and forth at increasing distances, with one standing on or near a foul line and the other in center field. Price stated that this method is followed to avoid other players who are warming up, including the visiting team, and minimize the possibility that a player could be hit by an errant throw. Price further claimed that this warm-up procedure, though unwritten, is customary to the sport and followed at every baseball level, from Little League to the Major Leagues.
¶ 7 Taylor argued that summary judgment for the Mariners should not be granted because she was not aware that her circumstances posed any risk of injury. She claimed she did not know how players warmed up and never thought about the possibility of a ball entering the stands and hurting someone during a warm-up. Taylor further argued that the Mariners' warm-up method was negligent, contending that they should have a formal policy prohibiting pitchers from practicing near the stands.
¶ 8 The trial court granted the Mariners' motion and dismissed Taylor's claims. Taylor appeals.

DISCUSSION
¶ 9 Taylor contends that the trial court erred in dismissing her claims against the Mariners on summary judgment. Specifically, she argues that there are issues of material fact regarding whether the Mariners' warm-up method was negligent and whether she assumed the risk of being injured by an errant throw.

I. Standard of Review
¶ 10 In reviewing an order granting summary judgment, an appellate court engages in the same inquiry as the trial court. Degel v. Majestic Mobile Manor, Inc., 129 Wash.2d 43, 48, 914 P.2d 728 (1996); Mountain Park Homeowners Ass'n v. Tydings, 125 Wash.2d 337, 341, 883 P.2d 1383 (1994). Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. CR 56(c); Nivens v. 7-11 Hoagy's Corner, 133 Wash.2d 192, 197-98, 943 P.2d 286 (1997). The court must make all inferences and resolve all ambiguities in favor of the nonmoving party. Degel, 129 Wash.2d at 48, 914 P.2d 728. The motion should be granted only if, from all the evidence, a reasonable person could reach but one conclusion. Lamon v. McDonnell Douglas Corp., 91 Wash.2d 345, 350, 588 P.2d 1346 (1979).

II. Implied Primary Assumption of Risk
¶ 11 Throughout the United States, for many decades, courts have required baseball stadiums to screen some seats  generally those behind home plate  to provide protection to spectators who choose it. See, e.g., Edling v. Kansas City Baseball & Exhibition Co., 181 Mo.App. 327, 168 S.W. 908 (1914); see also Crane v. Kansas City Baseball & Exhibition Co., 168 Mo.App. 301, 304, 153 S.W. 1076 (1913). In Washington, the law has long been that baseball stadiums have a duty to screen some seats and, as a corollary, a spectator who takes a seat in the unscreened portion of a stadium assumes the risk of being struck by a baseball. See Leek v. Tacoma Baseball Club, Inc., 38 Wash.2d 362, 229 P.2d 329 (1951).
*838 ¶ 12 A sport spectator's assumption of risk and a defendant sports team's duty of care are accordingly discerned under the doctrine of primary assumption of risk. The doctrine serves as a complete bar to recovery when an injury results from a risk inherent in the activity in which the plaintiff was engaged: "Implied primary assumption of risk arises where a plaintiff has impliedly consented (often in advance of any negligence by defendant) to relieve defendant of a duty to plaintiff regarding specific known and appreciated risks." Scott v. Pac. W. Mountain Resort, 119 Wash.2d 484, 497, 834 P.2d 6 (1992). The Court in Scott further explained:
One who participates in sports "assumes the risks" which are inherent in the sport. To the extent a plaintiff is injured as a result of a risk inherent in the sport, the defendant has no duty and there is no negligence. Therefore, that type of assumption acts as a complete bar to recovery. The doctrine of primary implied assumption of the risk can perhaps more accurately be described as a way to define a defendant's duty.
Scott, 119 Wash.2d at 498, 834 P.2d 6 (footnote omitted).
¶ 13 Under this implied primary assumption of risk, defendant must show that plaintiff had full subjective understanding of the specific risk, both its nature and presence, and that he or she voluntarily chose to encounter the risk. Brown v. Stevens Pass, Inc., 97 Wash.App. 519, 523, 984 P.2d 448 (1999) (citing Kirk v. Washington State Univ., 109 Wash.2d 448, 453, 746 P.2d 285 (1987); see also W. Page Keeton, et al., Prosser and Keeton on the Law of Torts, § 68 at 487 (5th ed.1984)). Unlike contributory negligence, where the standard applied is that of a "reasonable person of ordinary prudence," implied primary assumption of risk applies a subjective standard, one specific to the plaintiff and his or her situation. Home v. N. Kitsap Sch. Dist., 92 Wash.App. 709, 720, 965 P.2d 1112 (1998); Keeton, § 68. The question is "[w]hether a plaintiff . . ., at the time of decision, actually and subjectively knew all facts that a reasonable person in the defendant's shoes would know and disclose." Erie v. White, 92 Wash.App. 297, 303, 966 P.2d 342 (1998).

III. Errant Throws Into the Stands are an Inherent Risk of Baseball
¶ 14 The questions presented here are as follows: (1) did the warm-up activities occur outside of the sporting event for which Taylor impliedly assumed the risks inherent in baseball; (2) is it unusual for a ball to enter the stands due to an errant throw; and (3) was the errant throw foreseeable and avoidable by Taylor, given her familiarity with the game?
¶ 15 First, Taylor fails to articulate any cognizable reason for us to find that the warm-up portion of the event is not encompassed within the spectator's implied primary assumption of risk. No Washington case explicitly states that warm-ups are a necessary and inherent part of the sports event. However, it is undisputed that the warm-up is part of the sport, that spectators such as Taylor purposely attend that portion of the event, and that the Mariners permit ticket-holders to view the warm-up.
¶ 16 Therefore, we reject Taylor's attempt to delineate between portions of the event and assign varying standards of care to the defendant. Instead, we adopt the reasoning of Dalton v. Jones, 260 Ga.App. 791, 581 S.E.2d 360 (2003), which held that warm-ups are integral to the game of baseball and that a spectator assumes the risk of being struck by a baseball during warm-ups:
Whether the ball was thrown or tossed during an inning of play or between innings lacks legal significance because, as the trial court noted, "this throw occurred during a time which was necessary to the playing of the game, during which time the Plaintiff has assumed the risk of injury from bats, balls, and other missiles."
Dalton, 260 Ga.App. 791 at 793, 581 S.E.2d 360. See also Zeitz v. Cooperstown Baseball Centennial, Inc., 31 Misc.2d 142, 29 N.Y.S.2d 56 (1941). We find the fact that Taylor was injured during warm-up is not legally significant because that portion of the event is necessarily incident to the game.
*839 ¶ 17 The second element of Taylor's argument is that there are issues of fact regarding whether she suffered an "unusual injury." She relies on Jones v. Three Rivers Management Corp., 483 Pa. 75, 394 A.2d 546 (1978), Maytnier v. Rush, 80 Ill.App.2d 336, 225 N.E.2d 83 (1967), and Cincinnati Base Ball Club Co. v. Eno, 112 Ohio St. 175, 147 N.E. 86 (1925), to support the proposition that the Mariners violated the duty of care by leading Taylor into "unusual danger."
¶ 18 However, these cases do not support Taylor's argument. Eno and Maytnier simply stand for the proposition that there may be liability when the baseball activity or the location of the baseball activity is unusual, not when it is unusual that a person is injured. See Eno, 147 N.E. at 89 (when, between games of a doubleheader, ball batted from unusual location into unscreened seats struck plaintiff, there was a question of fact whether the plaintiff was aware of the particular danger); Maytnier, 80 Ill.App.2d 336, 225 N.E.2d 83 (where plaintiff was struck and injured by a ball that was not in play in the game, but was thrown from the bullpen to his left while his attentions were focused on the ball actually in play in the game to his right, court could not say defendant did not breach its duty as a matter of law). Jones is also inapposite because the plaintiff there was on an internal walkway, not in an unscreened seating section, when she was struck by a ball during batting practice. The court concluded there was an issue of fact regarding her assumption of the risk because the particular stadium design contained a walkway that was not associated with the way baseball is played or viewed. Jones, 394 A.2d at 551.
¶ 19 Here, there is no evidence that the circumstances leading to Taylor's injury constituted an unusual danger. It is undisputed that it is the normal, every-day practice at all levels of baseball for pitchers to warm up in the manner that led to this incident. The risk of injuries such as Taylor's are within the normal comprehension of a spectator who is familiar with the game. Indeed, the possibility of an errant ball entering the stands is part of the game's attraction for many spectators.
¶ 20 The third element of Taylor's claim is whether the risk of injury would be foreseeable to a reasonable person with Taylor's familiarity with baseball. The record contains substantial evidence regarding Taylor's familiarity with the game. She attended many of her sons' baseball games, she witnessed balls entering the stands, she had watched Mariners' games both at the Kingdome and on television, and she knew that there was no screen protecting her seats, which were close to the field. In fact, as she walked to her seat she saw the players warming up and was excited about being in an unscreened area where her party might get autographs from the players and catch balls.
¶ 21 Taylor nonetheless contends that she could not possibly expect that an overthrow could occur because no one associated with the Mariners had ever seen someone hit by an overthrown ball during long toss. The fact that no one has been injured simply shows that long toss does not pose an unreasonable risk. It does not support Taylor's contention that she did not assume the risk of an overthrow. Accordingly, Taylor assumed the risk of a ball entering the stands.
¶ 22 Taylor also claims she could not be expected to avoid an errant throw because there was more than one ball in play on the field. But this element has no bearing on Taylor's case because she did not allege that she was distracted by any action on the field. In fact, she said that she had turned her attention away from the field and toward the seats when she was struck. A reasonable person in Taylor's position would realize that, if she is standing behind players who are throwing a ball back and forth, there is a possibility a ball might not be caught, and that an uncaught ball might injure her if she does not pay attention.
¶ 23 Finally, Taylor assigns error to the trial court's admission of Coach Price's testimony as that of an expert under ER 702.[2] Because Price, a professional baseball *840 pitching coach, is highly qualified to address why and how the athletes prepare for games, his testimony was properly admitted.
¶ 24 Affirmed.
WE CONCUR: BECKER and AGID, JJ.
NOTES
[1] Taylor voluntarily dismissed her claims against Jose Mesa, Mirla Mesa, Freddy Garcia, and the Washington Baseball Stadium Public Facilities District.
[2] "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." ER 702.