IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| BRIAN PELLHAM, | ) | |
| | ) | No. 34433-9-III |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| LET'S GO TUBING, INC., DAVID | ) | PUBLISHED OPINION |
| JOHNSON AND JANE DOE JOHNSON, | ) | |
| a married couple, and the marital | ) | |
| community composed thereof, | ) | |
| | ) | |
| Respondents. | ) | |

FEARING, C.J. — This appeal asks: does an inner tube rental company owe a duty

to warn a renter about a fallen log in a river when the log is hidden from but near the

launch site, the river's current draws the tuber toward the log, the company knows of the

fallen log, the company warns other tubers of the log, and the company chooses the

launch site? To answer this question, interests, such as exhilarating and uninhibited

outdoor recreation, retaining the natural environment, and freedom to contract compete

with cautious business practices, full disclosure of risks, and compensation for injury.

Based on the doctrine of inherent peril assumption of risk, we answer the question in the

negative. We affirm the trial court's summary judgment dismissal of renter Brian

Pellham's suit for personal injury against the tube rental company, Let's Go Tubing, Inc.

## FACTS

Brian Pellham sues for injuries suffered while inner tubing on the Yakima River.

Because the trial court dismissed Pellham's suit on summary judgment, we write the facts

in a light favorable to Pellham.

Melanie Wells invited Brian Pellham and his domestic partner to join her and

three others on a leisurely unguided excursion floating the Yakima River. Wells arranged

the expedition and reserved equipment and transportation from Let's Go Tubing, Inc.

On July 30, 2011, Brian Pellham met the Wells party at the Let's Go Tubing's

Umtanum gathering site, where additional tubers waited. Before boarding a bus, each

participant signed a release of liability and assumption of risk form. Pellham felt rushed,

but read and signed the form. The form provided:

> I, the renter of this rental equipment, assume and understand that
> river tubing can be HAZARDOUS, and that rocks, logs, bridges, plants,
> animals, other people, other water craft, exposure to the elements,
> variations in water depth and speed of current, along with other structures
> and equipment, and many other hazards or obstacles exist in the river
> environment. In using the rental equipment or any facilities or vehicles
> related thereto such dangers are recognized and accepted whether they are
> marked or unmarked. River tubing can be a strenuous and physically
> demanding activity. It requires walking, bending, lifting, paddling,
> swimming, and awareness of the outdoor environment. I realize that slips,
> falls, flips, and other accidents do occur and serious injuries or death may
> result and I assume full responsibility for these risks. . . "IN
> CONSIDERATION FOR THIS RENTAL AND ANY USE OF THE

2

> FACILITIES, VEHICLES, OR ENVIRONMENT RELATED TO THE
> USE OF THIS EQUIPMENT, I HEREBY RELEASE HOLD HARMLESS
> AND INDEMNIFY LET'S GO TUBING, INC. ITS SUBSIDIARIES AND
> ITS AGENTS FROM ANY AND ALL CLAIMS AND LIABILITIES
> ARISING OUT OF OR IN CONNECTION WITH THE USE OF THIS
> RENTAL EQUIPMENT"

Clerk's Papers (CP) at 46 (capitalization and quotation marks in original). On other occasions, such as a rafting trip, Brian Pellham signed a waiver. In his business, he employs release forms.

Let's Go Tubing launches its customers from the Umtanum site unless the Yakima River level runs low. With low water, the company buses customers to one of two other Yakima River sites, Big Horn or Ringer Loop.

On July 30, 2011, Let's Go Tubing's shuttle bus, because of a low river level, transported Brian Pellham, his group members, and other customers eight miles upstream to Ringer Loop. Ringer Loop maintains a public concrete boat ramp and public restroom. The total number of customers on the excursion approached twenty. During transport, Steff Thomas, the Let's Go Tubing bus driver, told Melanie Wells and a handful of others seated at the front of the bus to push into the middle of the river, once he or she embarks, because a fallen tree obstructed the river immediately downriver but out of sight from the launch site. We do not know the number of customers the driver warned. Thomas did not warn Pellham of the obstructing tree. Nor did anyone else. Someone, possibly Thomas, warned everyone not to leave the river except at designated spots because

3

private owners own most of the river bank.

At the launch site, Let's Go Tubing handed each person a Frisbee to use as a paddle. Brian Pellham requested a lifejacket, but Steff Thomas ignored him. Fifteen inner tubers entered the river first. Pellham and four others followed in a second group with their tubes tied together. They encountered a swift current. As soon as the flotilla of five rounded the first bend in the river, they saw a fallen tree extending halfway across the river. Many branches extended from the tree trunk. Each paddled furiously with his Frisbee, but the fleet of five tubes struck the tree. Brian Pellham held the tree with his left hand and attempted to steer around the tree. The current grabbed the inner tubes and Pellham fell backward into the river. The fall broke Pellham's eardrum. The current forced Pellham under the tree and the water level. When Pellham resurfaced, his head struck a large branch. He sustained a whiplash. His chest also hit the branch.

Brian Pellham swam to shore and ended his river excursion. Pellham told Steff Thomas of his dangerous encounter, and the driver admitted he knew about the fallen tree but laws prevented Let's Go Tubing from removing the obstacle.

Brian Pellham later underwent a neck fusion surgery. The accident also caused damage to a low back disk, and the damage creates pain radiating to his left foot.

## PROCEDURE

Brian Pellham sued Let's Go Tubing for negligent failure to warn and Consumer Protection Act, chapter 19.86 RCW, violations. Let's Go Tubing answered the complaint

4

and raised affirmative defenses, including release of liability and assumption of the risk. The company filed a motion for summary judgment dismissal based on the release and on assumption of risk. In response to the motion, Pellham argued that he did not waive liability because Let's Go Tubing committed gross negligence. He also argued he did not expressly or impliedly assume the risk of floating into a hazard. Pellham agreed to dismissal of his consumer protection claim. The trial court granted summary dismissal of all of Pellham's claims.

## LAW AND ANALYSIS

On appeal, Brian Pellham contends the trial court erred in dismissing his claim because he presented sufficient evidence of gross negligence because Let's Go Tubing chose the excursion location, knew the existence of a hazard, and failed to warn Pellham of the hazard. He argues that the rental company's gross negligence supersedes any release of liability and assumption of the risk contained in the form he signed. On appeal, he does not argue liability against Let's Go Tubing for failing to provide a life vest.

Let's Go Tubing responds that summary judgment was appropriate because Pellham failed to establish a duty, the liability release disposes of the claim, and Pellham's evidence does not create a genuine issue as to any fact material to establishing gross negligence. We affirm based on the inherent risks in river tubing. Because of Pellham's voluntary participation in the outdoor recreation activity, he assumed the risk of a fallen log and swift current. Conversely, Pellham's assumption of the risk created no

5

duty in Let's Go Tubing to warn or prevent injury to Pellham from trees in the river. Because we rely on the inherent risks in river tubing, we do not address whether the written agreement signed by Pellham bars his suit.

Because we hold that Brian Pellham assumed the risk and thereby rendered Let's Go Tubing duty less, we do not address whether Pellham created an issue of fact with regard to gross negligence. We conclude that, to avoid application of inherent peril assumption of risk, Pellham needed to show intentional or reckless misconduct of the rental company, and Pellham does not show or argue either.

Summary Judgment Principles

We commence with our obligatory recitation of summary judgment principles. This court reviews a summary judgment order de novo, engaging in the same inquiry as the trial court. *Highline School District No. 401 v. Port of Seattle*, 87 Wn.2d 6, 15, 548 P.2d 1085 (1976); *Mahoney v. Shinpoch*, 107 Wn.2d 679, 683, 732 P.2d 510 (1987). Summary judgment is proper if the records on file with the trial court show "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." CR 56(c). This court, like the trial court, construes all evidence and reasonable inferences in the light most favorable to Brian Pellham, as the nonmoving party. *Barber v. Bankers Life & Casualty Co.*, 81 Wn.2d 140, 142, 500 P.2d 88 (1972); *Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982). A court may grant summary judgment if the pleadings, affidavits, and depositions establish that there is no

6

genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Lybbert v. Grant County*, 141 Wn.2d 29, 34, 1 P.3d 1124 (2000).

## Defenses on Review

Let's Go Tubing seeks affirmation of the summary judgment dismissal of Brian Pellham's claim based both on an absence of duty and Pellham's assumption of risk. In turn, Pellham argues that, under RAP 2.5(a), the rental company may not assert a lack of duty because Pellham did not raise this defense before the trial court.

We need not address Brian Pellham's objection to Let's Go Tubing's argument of lack of duty. We base our decision on inherent peril assumption of risk and the rental company raised the defense of assumption of risk below. Anyway, assumption of risk in this context is equivalent to a lack of duty. Assumption of the risk in the sports participant context is in reality the principle of no duty and hence no breach and no underlying cause of action. *Brown v. Stevens Pass, Inc.*, 97 Wn. App. 519, 523, 984 P.2d 448 (1999); *Codd v. Stevens Pass, Inc.*, 45 Wn. App. 393, 401-02, 725 P.2d 1008 (1986).

## Assumption of Risk

A negligence claim requires the plaintiff to establish (1) the existence of a duty owed, (2) breach of that duty, (3) a resulting injury, and (4) a proximate cause between the breach and the injury. *Tincani v. Inland Empire Zoological Society*, 124 Wn.2d 121, 127-28, 875 P.2d 621 (1994). Thus, to prevail on his negligence claim, Brian Pellham must establish that Let's Go Tubing owed him a duty of care. *Folsom v. Burger King*,

7

135 Wn.2d 658, 671, 958 P.2d 301 (1998). The tort concept of duty overlaps with the contract and tort principles of assumption of risk. As previously mentioned, sometimes assumption of risk relieves the defendant of a duty. *Brown v. Stevens Pass, Inc.*, 97 Wn. App. at 523 (1999); *Codd v. Stevens Pass, Inc.*, 45 Wn. App. at 402 (1986).

The threshold determination of whether a duty exists is a question of law. *Tincani v. Inland Empire Zoological Society*, 124 Wn.2d at 128; *Coleman v. Hoffman*, 115 Wn. App. 853, 858, 64 P.3d 65 (2003). We hold that, because of Brian Pellham's assumption of the risk of fallen trees in the water, Let's Go Tubing, as a matter of law, had no duty to warn Pellham of the danger, or, at the least, the rental company possessed only a restricted duty to not intentionally injure Pellham or engage in reckless misconduct.

We first briefly explore the variegated versions of assumption of risk in order to later analyze the application of inherent peril assumption or risk. The term "assumption of the risk" expresses several distinct common law theories, derived from different sources, which apply when a plaintiff knowingly exposes himself to particular risks. *Allen v. Dover Co-Recreational Softball League*, 148 N.H. 407, 807 A.2d 1274, 1281 (2002); Francis H. Bohlen, *Voluntary Assumption of Risk* (pt. 1), 20 HARV. L. REV. 14, 15-30 (1906); W. PAGE KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 68 (5th ed. 1984). Stated differently, the general rubric of assumption of risk does not signify a singular doctrine but rather encompasses a cluster of discrete concepts. *Kirk v. Washington State University*, 109 Wn.2d 448, 453, 746 P.2d 285 (1987). Washington

8

law and most other states' jurisprudence recognize four taxonomies of the assumption of risk doctrine: (1) express, (2) implied primary, (3) implied unreasonable, and (4) implied reasonable. *Gregoire v. City of Oak Harbor*, 170 Wn.2d 628, 636, 244 P.3d 924 (2010); *Gleason v. Cohen*, 192 Wn. App. 788, 794, 368 P.3d 531 (2016); 16 DAVID K. DEWOLF & KELLER W. ALLEN, WASHINGTON PRACTICE: TORT LAW AND PRACTICE § 9:11, at 398-99 (4th ed. 2013).

Before the enactment of comparative negligence and comparative fault statutes, practitioners and courts encountered little reason to distinguish the four versions of assumption of risk, because at common law all assumption of the risk completely barred recovery. *Scott v. Pacific West Mountain Resort*, 119 Wn.2d 484, 496, 834 P.2d 6 (1992). Today, the first two categories of assumption of risk, express assumption and implied primary assumption, on the one hand, continue to operate as a complete bar to a plaintiff's recovery. *Kirk v. Washington State University*, 109 Wn.2d at 453-54; *Gleason v. Cohen*, 192 Wn. App. at 794. On the other hand, implied unreasonable and implied reasonable assumption meld into contributory negligence and merely reduce the plaintiff's recoverable damages based on comparative fault pursuant to RCW 4.22.005 and .015. *Scott v. Pacific West Mountain Resort*, 119 Wn.2d at 497. The last two types are merely alternative names for contributory negligence. *Gregoire v. City of Oak Harbor*, 170 Wn.2d at 636 (2010). Our decision relies on implied primary assumption, but we will discuss other renderings of assumption of risk in order to sculpt our decision.

9

Express assumption of risk arises when a plaintiff explicitly consents to relieve the defendant of a duty owed by the defendant to the plaintiff regarding specific known risks. *Gregoire v. City of Oak Harbor*, 170 Wn.2d at 636; *Kirk v. Washington State University*, 109 Wn.2d at 453. Implied primary assumption of risk follows from the plaintiff engaging in risky conduct, from which the law implies consent. *Kirk v. Washington State University*, 109 Wn.2d at 453; *Erie v. White*, 92 Wn. App. 297, 303, 966 P.2d 342 (1998). Implied unreasonable assumption of risk, by contrast, focuses not so much on the duty and negligence of the defendant as on the further issue of the objective unreasonableness of the plaintiff's conduct in assuming the risk. *Kirk v. Washington State University*, 109 Wn.2d at 454. Implied reasonable assumption of risk is roughly the counterpart to implied unreasonable assumption of risk in that the plaintiff assumed a risk, but acted reasonably in doing so. *Kirk v. Washington State University*, 109 Wn.2d at 454.

We confront difficulty in distinguishing among at least three of the four categories because of the nondescript identifiers and near homophonic labels of some classifications. Therefore, we recommend that the Supreme Court rechristen the categories as express assumption, inherent peril assumption of risk, and increased danger assumption of risk. The gist of implied reasonable and implied unreasonable assumption of risk is that the defendant performed conduct that increased the risk of an activity or situation beyond the risks inherent in the activity or situation and the plaintiff reasonably or unreasonably encountered this increased risk. The traditional categories of implied

10

unreasonable and implied reasonable assumption of risk hold no meaningful distinction since both reduce rather than bar the plaintiff's recovery, and so we urge combining the two concepts into increased danger assumption of risk. We hereafter use these new terms.

## Inherent Peril Assumption of Risk

We now focus on inherent peril assumption of risk. Inherent peril assumption bars a claim resulting from specific known and appreciated risks impliedly assumed often in advance of any negligence of the defendant. *Scott v. Pacific West Mountain Resort*, 119 Wn.2d at 497 (1992); *Boyce v. West*, 71 Wn. App. 657, 666-67, 862 P.2d 592 (1993). Plaintiff's consent to relieve the defendant of any duty is implied based on the plaintiff's decision to engage in an activity that involves those known risks. *Egan v. Cauble*, 92 Wn. App. 372, 376, 966 P.2d 362 (1998); *Gleason v. Cohen*, 192 Wn. App. at 797 (2016). One who participates in sports impliedly assumes the risks inherent in the sport. *Scott v. Pacific West Mountain Resort*, 119 Wn.2d at 498; *Boyce v. West*, 71 Wn. App. at 667.

Whether inherent peril assumption of risk applies depends on whether the plaintiff was injured by an inherent risk of an activity. *Gleason v. Cohen*, 192 Wn. App. at 797. The plaintiff assumes the dangers that are inherent in and necessary to a particular activity. *Tincani v. Inland Empire Zoological Society*, 124 Wn.2d at 144 (1994); *Scott v. Pacific West Mountain Resort*, 119 Wn.2d at 500-01; *Gleason v. Cohen*, 192 Wn. App. at

11

797; *Lascheid v. City of Kennewick*, 137 Wn. App. 633, 641-42, 154 P.3d 307 (2007);

*Taylor v. Baseball Club of Seattle, LP*, 132 Wn. App. 32, 37-39, 130 P.3d 835 (2006);

*Dorr v. Big Creek Wood Products, Inc.*, 84 Wn. App. 420, 427, 927 P.2d 1148 (1996).

The classic example of inherent peril assumption involves participation in sports when a participant knows that the risk of injury is a natural part of such participation. *Gleason v. Cohen*, 192 Wn. App. at 798. One who engages in sports assumes the risks which are inherent in the sport. *Scott v. Pacific West Mountain Resort*, 119 Wn.2d at 498; *Gleason v. Cohen*, 192 Wn. App. at 798. To the extent a risk inherent in the sport injures a plaintiff, the defendant has no duty and there is no negligence. *Scott v. Pacific West Mountain Resort*, 119 Wn.2d at 498; *Gleason v. Cohen*, 192 Wn. App. at 798. A defendant simply does not have a duty to protect a sports participant from dangers that are an inherent and normal part of a sport. *Scott v. Pacific West Mountain Resort*, 119 Wn.2d at 498; *Gleason v. Cohen*, 192 Wn. App. at 798.

Inherent peril assumption extends to water sports. One who engages in water sports assumes the reasonably foreseeable risks inherent in the activity. *DeWick v. Village of Penn Yan*, 275 A.D.2d 1011, 713 N.Y.S.2d 592, 594 (2000). This assumption of risk includes inner tubing on water and canoe rentals. *Record v. Reason*, 73 Cal. App. 4th 472, 86 Cal. Rptr. 2d 547 (1999); *Ferrari v. Bob's Canoe Rental, Inc.*, 143 A.D.3d 937, 39 N.Y.S.3d 522 (2016). Bodies of water often undergo change, and changing conditions in the water do not alter the assumption of risk. *DeWick v. Village of Penn*

12

*Yan*, 713 N.Y.S.2d at 594. There is no duty to warn of the presence of natural transitory

conditions. *DeWick v. Village of Penn Yan*, 713 N.Y.S.2d at 594.

*DeWick v. Village of Penn Yan*, 713 N.Y.S.2d 592 is illustrative of the application

of inherent peril assumption in the context of water. Trina Kerrick and Daniel DeWick

drowned in Keuka Lake on June 19, 1995. Kerrick allegedly gained access to the lake

from the beach at Indian Pines Park, which was owned by defendant Village of Penn

Yan. While wading in the water, she stepped from a sandbar where the lake bottom

drops off and became caught in an undertow or current. DeWick drowned trying to save

her. Neither could swim. The accident occurred on a hot day, four days before the beach

officially opened for the season. The plaintiffs alleged that the village failed to warn

specifically about the dangers of the drop-off and swift current. The court summarily

dismissed the suit. The risk of reaching a drop-off was a reasonably foreseeable risk

inherent in wading into a lake.

Inherent peril assumption, as does express assumption of risk, demands the

presence of three elements. The evidence must show (1) the plaintiff possessed full

subjective understanding, (2) of the presence and nature of the specific risk, and

(3) voluntarily chose to encounter the risk. *Kirk v. Washington State University*, 109

Wn.2d at 453 (1987). The participant must know that the risk is present, and he or she

must further understand its nature; his or her choice to incur it must be free and

voluntary. *Brown v. Stevens Pass, Inc.*, 97 Wn. App. at 523. In the usual case, his or her

13

knowledge and appreciation of the danger will be a question for the jury; but where it is clear that any person in his or her position must have understood the danger, the issue may be decided by the court. *Brown v. Stevens Pass, Inc.*, 97 Wn. App. at 523; KEETON ET AL., *supra*, § 68, at 489.

The rule of both express and inherent peril assumption of risk requires a finding that the plaintiff had full subjective understanding of the presence and nature of the specific risk. *Kirk v. Washington State University*, 109 Wn.2d at 453. Depending on how specific the risk must be, this statement of the rule taken literally would abrogate the rule of inherent peril assumption because one rarely, if ever, anticipates the full particulars of an accident producing injury. One can never predict all of the variables that combine to cause an accident and injury. Also, the doctrine might not apply in wrongful death cases, because the judge or jury will lack evidence of the subjective understanding of the decedent. Washington courts' applications of the rule suggest, however, that the plaintiff need only know the general nature of the risk. One case example is *Boyce v. West*, 71 Wn. App. 657 (1993).

In *Boyce v. West*, a mother brought a suit against a college and its scuba diving instructor after the death of her son who died during a scuba diving accident while engaging in the college course. The mother claimed the instructor negligently taught and supervised her son. The son, Peter Boyce, signed a document acknowledging the possibility of death from scuba diving and assuming all risks in connection with the

14

course, whether foreseen or unforeseen. This court affirmed summary judgment dismissal of the claims against the school and the instructor. The court reasoned that negligent instruction and supervision are risks associated with being a student in a scuba diving course and were encompassed by the broad language of the contract. Although Peter may not have specifically considered the possibility of instructor negligence when he signed the release, this lack of consideration did not invalidate his express assumption of all risks associated with his participation in the course. Knowledge of a particular risk is unnecessary when the plaintiff, by express agreement, assumes all risks.

*Boyce v. West* entails express assumption of risk, but the same rule of subjective knowledge of risk applies to both express assumption and inherent peril assumption. Based on *Boyce v. West* and cases involving water sports, we hold that Brian Pellham assumed the risks involved in river tubing, including the fallen tree. Pellham may not have precisely and subjectively known how the combination of a swift current, bend in the river, and a fallen tree would produce his injury. Nevertheless, he knew of the potential of all factors. He may not have known of the location of any fallen tree in the river, but he knew of the potential of a fallen tree somewhere in the river. He had more reason to know of the dangers that caused his injury when he started his excursion than Peter Boyce had reason to know of the risks that led to his death when Boyce signed his college course form. In the setting of inherent peril assumption, New York courts have ruled that, if the participant fully comprehends the risks of the activity or if those risks are

15

obvious or reasonably foreseeable, he or she has consented to those risks and the defendant has performed its duty. *Ferrari v. Bob's Canoe Rental, Inc.*, 143 A.D.3d at 938 (2016); *Turcotte v. Fell*, 68 N.Y.2d 432, 439, 502 N.E.2d 964, 510 N.Y.S.2d 49 (1986).

While participants in sports are generally held to have impliedly assumed the risks inherent in the sport, such assumption of risk does not preclude a recovery for negligent acts that unduly enhance such risks. *Scott v. Pacific West Mountain Resort*, 119 Wn.2d at 501; *Gleason v. Cohen*, 192 Wn. App. at 798. This principle leads us to a discussion of increased danger assumption.

Courts have struggled to properly distinguish between inherent peril assumption of risk (implied primary assumption of risk), which bars the plaintiff's claim, and increased danger assumption of risk (implied unreasonable assumption of risk), which simply reduces the plaintiff's damages. *Barrett v. Lowe's Home Centers, Inc.*, 179 Wn. App. 1, 6, 324 P.3d 688 (2013). This court warned long ago that courts must carefully draw the line between these two types of assumption of risk. *Gleason v. Cohen*, 192 Wn. App. at 795; *Dorr v. Big Creek Wood Products, Inc.*, 84 Wn. App. at 425-26 (1996). A rigorous application of inherent peril assumption of risk could undermine the purpose of comparative negligence. *Kirk v. Washington State University*, 109 Wn.2d at 455-56. Significantly, inherent peril assumption is the exception rather than the rule in assumption of risk situations.

Increased danger assumption of risk does not involve a plaintiff's consent to relieve the defendant of a duty. *Gleason v. Cohen*, 192 Wn. App. at 796. In this type of assumption of risk, the defendant breached a duty that created a risk of harm, and the plaintiff chose to take that risk. *Gleason v. Cohen*, 192 Wn. App. at 796. Specifically, increased danger assumption involves the plaintiff's voluntary choice to encounter a risk created by the defendant's negligence. *Scott v. Pacific West Mountain Resort*, 119 Wn.2d at 499; *Gleason v. Cohen*, 192 Wn. App. at 796. Increased danger assumption of risk arises when the plaintiff knows of a risk already created by the negligence of the defendant, yet chooses voluntarily to encounter it. *Scott v. Pacific West Mountain Resort*, 119 Wn.2d at 499 (1992); *Gleason v. Cohen*, 192 Wn. App. at 798. In such a case, a plaintiff's conduct is not truly consensual, but is a form of contributory negligence, in which the negligence consists of making the wrong choice and voluntarily encountering a known unreasonable risk. *Gleason v. Cohen*, 192 Wn. App. at 796.

*Dorr v. Big Creek Wood Products, Inc.*, 84 Wn. App. 420 (1996) presents a good illustration of increased danger assumption of risk. Michael Dorr entered a forest where his friend John Knecht cut trees. Dorr knew of the phenomenon of "widow makers," large limbs caught in surrounding trees after a tree is felled. Nevertheless, after Knecht cut a tree, Knecht waved Dorr forward to meet him. As Dorr proceeded, a large limb fell on him. This court affirmed a verdict favoring Dorr. Although Dorr in general assumed the risk of "widow makers," Knecht's misleading directions led to implied unreasonable

17

or secondary assumption of risk. The jury could still find and did find Dorr comparatively at fault for proceeding with the knowledge of "widow makers," but Dorr's fault would be compared with Knecht's fault. The negligence of Knecht arose after Dorr entered the forest.

Brian Pellham alleges that Let's Go Tubing was negligent by reason of sending him and others on a tube in fast moving water with a downed tree in the middle of the water without warning to the tuber. Let's Go Tubing did not create the risk and could not remove the risk. Although Pellham knew of the risks of logs and current, Pellham did not know of the precise risk when he first encountered it. When he noticed the risk, he lacked time to avoid the hazard. Pellham did not voluntarily proceed after knowing of the alleged negligence of Let's Go Tubing. Any alleged negligence of Let's Go Tubing occurred before Pellham entered the river. Therefore, increased danger assumption of risk does not apply.

Let's Go Tubing performed no act that created the swift current or felled the log into the water. The cases that decline application of inherent peril assumption involve a positive act of the defendant such as the implanting of a post or snow shack adjacent to a ski run. *Scott v. Pacific West Mountain Resort*, 119 Wn.2d 484 (1992); *Brown v. Stevens Pass, Inc.*, 97 Wn. App. at 521 (1999).

One might argue that Let's Go Tubing's failure to warn increased the risk attended to the fallen log in the Yakima River. A defendant may be held liable when a reasonable

18

person would customarily instruct a plaintiff in respect to the dangers inherent in an activity. *Allen v. Dover Co-Recreational Softball League*, 807 A.2d at 1288. Thus, a defendant may be held liable if the plaintiff alleges that a reasonable person would customarily warn, advise, inform, and instruct regarding the risk of injury to participants and the manner in which such risks could be minimized and their failure to do so caused the plaintiff's injuries. *Allen v. Dover Co-Recreational Softball League*, 807 A.2d at 1288. Brian Pellham presents no evidence that renters of watercrafts customarily warn of fallen natural objects in the water.

The document signed by Brian Pellham contained terms in addition to releasing Let's Go Tubing from liability. In the instrument, Pellham also recognized that the hazards of river tubing included the existence of rocks, logs, plants, and variations in water depth and speed of current. Pellham agreed to assume full responsibility for all risks involved in river tubing including serious injuries and death resulting from the hazards. Although we do not base our holding on express assumption of risk, we note that the release's recitation of dangers warned Pellham of the inherent perils attended to tubing and those dangers that led to Pellham's injuries.

## Gross Negligence

Brian Pellham argues that the waiver form he signed does not bar a claim for gross negligence. The parties, in turn, devote much argument to the issue of whether Pellham creates a question of fact as to gross negligence. Since we do not rely on express

assumption of risk, we need not directly address this argument. Instead, we must ask and answer whether a tuber may overcome the defense of inherent peril assumption of risk by showing gross negligence by the tube rental company.

When inherent peril assumption of risk applies, the plaintiff's consent negates any duty the defendant would have otherwise owed to the plaintiff. *Scott v. Pacific West Mountain Resort*, 119 Wn.2d at 498 (1992); *Gleason v. Cohen*, 192 Wn. App. at 798 (2016). Based on this premise of inherent peril assumption, the defendant should avoid liability for gross negligence. Gross negligence constitutes the failure to exercise slight care. *Nist v. Tudor*, 67 Wn.2d 322, 331, 407 P.2d 798 (1965). The lack of duty resulting from inherent peril assumption should extend to an absence of any obligation to exercise slight care.

At the same time, gross negligence claims survive a release against liability. A sporting participant's assumption of inherent risks effectively acts as a release from liability. Since gross negligence claims survive a release, gross negligence maybe should survive inherent peril assumption of risk.

No Washington case directly holds that a claim for gross negligence survives the plaintiff's express assumption of risk. Nevertheless, in at least two decisions, Washington courts assumed that a gross negligence cause of action endured. *Boyce v. West*, 71 Wn. App. 657 (1993); *Blide v. Rainier Mountaineering, Inc.*, 30 Wn. App. 571, 636 P.2d 492 (1981). In *Boyce v. West*, the surviving mother failed to present evidence

20

of gross negligence. In *Blide v. Rainier Mountaineering, Inc.*, an injured climber did not argue gross negligence. Other jurisdictions have held that express assumption of risk does not bar a claim for gross negligence since public policy does not allow one to exonerate oneself from gross negligence. *Coomer v. Kansas City Royals Baseball Corp.*, 437 S.W.3d 184, 193 n.3 (Mo. 2014); *Kerns v. Hoppe*, 128 Nev. 910, 381 P.3d 630 (2012); *Perez v. McConkey*, 872 S.W.2d 897, 904 (Tenn. 1994).

Since express assumption of risk and inherent peril assumption of risk both result in the bar of the plaintiff's claim and arise from the plaintiff's voluntary assumption of risk, one might argue that a gross negligence claim should survive assumption of risk by inherent peril if it survives express assumption of risk. Nevertheless, the two varieties of assumption of risk promote different interests and raise disparate concerns. A signed assumption of all risks could be the result of unequal bargaining power and apply to activities that involve little, or no, risks. The bargaining power with regard to inherent peril assumption is immaterial. Assumption follows from hazards the plaintiff voluntarily assumes because of the thrill and enjoyment of an activity.

We find no foreign decisions in which the court holds that a cause of action for gross negligence survives the application of inherent peril assumption of risk in the context of sports or outdoor recreation. Instead, other courts addressing the question consistently limit the liability of the defendant, when inherent peril assumption applies, to intentional or reckless conduct of the defendant. *Ellis v. Greater Cleveland R.T.A.*, 2014-

21

Ohio-5549, 25 N.E.3d 503, 507 (Ct. App.); *Custodi v. Town of Amherst*, 20 N.Y.3d 83,

980 N.E.2d 933, 957 N.Y.S.2d 268 (2012); *Cole v. Boy Scouts of America*, 397 S.C. 247,

725 S.E.2d 476, 478 (2011); *Pfenning v. Lineman*, 947 N.E.2d 392, 404 (Ind. 2011);

*Yoneda v. Tom*, 110 Haw. 367, 133 P.3d 796, 808 (2006); *Peart v. Ferro*, 119 Cal. App.

4th 60, 13 Cal. Rptr. 3d 885, 898 (2004); *Allen v. Dover Co-Recreational Softball

League*, 807 A.2d at 1281 (2002); *Behar v. Fox*, 249 Mich. App. 314, 642 N.W.2d 426,

428 (2001); *Estes v. Tripson*, 188 Ariz. 93, 932 P.2d 1364, 1365 (Ct. App. 1997); *Savino

v. Robertson*, 273 Ill. App. 3d 811, 652 N.E.2d 1240, 1245, 210 Ill. Dec. 264 (1995);

*King v. Kayak Manufacturing Corp.*, 182 W. Va. 276, 387 S.E.2d 511, 518 (1989). A

recklessness standard encourages vigorous participation in recreational activities, while

still providing protection from egregious conduct. *Behar v. Fox*, 642 N.W.2d at 428

(2001). We join the other jurisdictions in imposing an intentional and reckless standard,

rather than a gross negligence standard, when the plaintiff assumes the risks of inherent

perils in a sporting or outdoor activity.

Gross negligence consists of the failure to exercise slight care. *Nist v. Tudor*, 67

Wn.2d at 331 (1965). Reckless misconduct denotes a more serious level of misconduct

than gross negligence. An actor's conduct is in "reckless disregard" of the safety of

another if he or she intentionally does an act or fails to do an act that it is his or her duty

to the other to do, knowing or having reason to know of facts that would lead a

reasonable person to realize that the actor's conduct not only creates an unreasonable risk

22

No. 34433-9-III
*Pellham v. Let's Go Tubing, Inc.*

of bodily harm to the other but also involves a high degree of probability that substantial harm will result to him or her. *Adkisson v. City of Seattle*, 42 Wn.2d 676, 685, 258 P.2d 461 (1953); *Brown v. Department of Social & Health Services*, 190 Wn. App. 572, 590, 360 P.3d 875 (2015). Brian Pellham does not allege that Let's Go Tubing engaged in reckless conduct. No evidence supports a conclusion that the tube rental company bus driver purposely omitted a warning to Pellham with knowledge that Pellham would suffer substantial harm.

## CONCLUSION

We affirm the trial court's summary judgment dismissal of Brian Pellham's suit against Let's Go Tubing.

_____
Fearing, C.J.

WE CONCUR:

_____
Korsmo, J.

_____
Siddoway, J.

23