IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| DEBORAH STENZEL, a single woman, | ) | No. 39929-0-III |
| | ) | (consolidated with |
| Appellant, | ) | No. 40248-7-III) |
| | ) | |
| v. | ) | |
| | ) | |
| DANIIL DUMBRAVA, a single man; and | ) | |
| CITY OF AIRWAY HEIGHTS, | ) | |
| | ) | UNPUBLISHED OPINION |
| Respondents, | ) | |
| | ) | |
| SPOKANE TRANSIT AUTHORITY; | ) | |
| WALMART; STATE OF | ) | |
| WASHINGTON; and COUNTY OF | ) | |
| SPOKANE, | ) | |
| | ) | |
| Defendants. | ) | |

FEARING, J. — Before a December dawn, Deborah Stenzel crossed Airway Heights' Hayford Road outside a marked crosswalk, and a car driven by Daniil Dumbrava struck her. Stenzel sues the respondents city of Airway Heights (City) and Daniil Dumbrava for negligence. She now appeals a summary judgment ruling favoring both respondents. We reverse because, even if Stenzel jaywalked, the city owed her a duty and because implied primary assumption of risk does not bar all recovery against Dumbrava.

FACTS

On December 20, 2018, at 6:30 a.m., Deborah Stenzel exited a Spokane Transit bus onto the sidewalk a number of feet north of an entry into a ubiquitous Walmart parking lot on the east side of Hayford Road in Airway Heights. Stenzel rode the bus to begin her work shift at Cyrus O'Leary's. The sun would not rise for an hour. Like many of her coworkers, Stenzel regularly used the Spokane Transit system to commute.

When exiting the bus, Deborah Stenzel and a work colleague, Michael Wilson, waited on the Hayford Road sidewalk until traffic stopped. That spot was not at an intersection nor displayed a marked crosswalk. At that location, Hayford Road consisted of two northbound lanes, two southbound lanes, and a middle turn lane.

To arrive at Cyrus O'Leary's, Deborah Stenzel eventually would need to cross Highway 2 at the intersection with Hayford Road. Stenzel could have continued ambling south on the east side sidewalk for a block and then crossed Hayford Road in a marked crosswalk at this intersection.

At the spot where Deborah Stenzel and Michael Wilson crossed Hayford Road, a curb ramp with bright yellow tactile pavers sloped toward the street. We call this ramp a pavers pad. Such ramps are also known as American Disability Act (ADA) warning pads or ADA access pads. Directly across the street on the west side of Hayford Road, another bright yellow tactile paver pad connected to a short concrete pathway that led to a

2

sidewalk running parallel to Hayford Road. The design of the two ramps and tactile

pavers mirrored those found at other locations along Hayford Road where marked

crosswalks existed. Spokane County laid the two pavers pads, at Deborah Stenzel's

crossing, during a roadway improvement project in 2006. The two pavers pads

evidenced an intent to later add a crosswalk across Hayford Road at that location.



East side of Hayford Road looking west. Appellant's Br. at 19.

3



West side of Hayford Road, looking east. Clerk's Papers (CP) at 319.



West side of Hayford Road, looking west. CP at 318.

After traffic stopped for Deborah Stenzel and Michael Wilson, Stenzel began her trek across Hayford Road. Wilson preceded her across the street. At the same time, Daniil Dumbrava drove southbound in the inside lane of the two southbound lanes. When the vehicle ahead of Dumbrava stopped to allow Stenzel and her colleague to cross, Dumbrava swerved around it and struck Stenzel in the outside lane of southbound Hayford Road. The collision caused Stenzel numerous physical injuries and a debilitating traumatic brain injury.

Deborah Stenzel has no recollection of the events on the day of the accident. She testified in her deposition that she crossed Hayford Road at the spot of her injuries because of its convenience. She added that she believed the location to serve the function of a crosswalk.

Lee Bennett served as Chief of Police for the City of Airway Heights from 2003 until his retirement in 2020. In a declaration, Chief Bennett stated that law enforcement, including himself, knew that pedestrians frequently crossed Hayford Road at locations, not designated as crosswalks, because curb cutouts, yellow markings, and tactile warning pavers presented an appearance of official crossings. Bennett and other officers often observed pedestrians crossing at the location where Daniil Dumbrava's car struck Deborah Stenzel. Officers regularly saw Walmart shopping carts abandoned along the west side or the opposite side of Hayford Road near the position. Chief Bennett further

5

attested that he repeatedly raised, with city of Airway Heights administration, concerns about the misleading appearance of a crosswalk at the site of Daniil Dumbrava's car striking Deborah Stenzel.

PROCEDURE

Deborah Stenzel filed a negligence action against the city of Airway Heights, the Spokane Transit Authority, Spokane County, the State of Washington, Walmart, and Daniil Dumbrava. Stenzel alleged Dumbrava drove unsafely and failed to yield to her progress. Stenzel asserted that the City, the Spokane Transit Authority, and Walmart failed to provide a reasonably safe roadway, bus stop, and pedestrian crossing in an area that lacked adequate lighting and maintained misleading paver pads resembling a crosswalk. Stenzel later dismissed Walmart, Spokane Transit Authority, the State of Washington, and Spokane County. This appeal only concerns Airway Heights and Daniil Dumbrava.

Deborah Stenzel hired roadway design and safety expert, Mark Rieser, to assist her in this litigation. Rieser testified in deposition that the failure to remove remnants of the abandoned crosswalk created an unreasonably dangerous condition by enticing pedestrians to cross at an inherently hazardous location. He identified additional factors that contributed to the pedestrian-automobile accident, including inadequate lighting,

heavy vehicle traffic volumes, prior collisions in the area, and the known presence of significant pedestrian traffic.

The city of Airway Heights moved for summary judgment. The City asserted that Deborah Stenzel jaywalked across Hayford Road and the City owed no duty to jaywalkers particularly because of the availability of safe and marked crosswalks for pedestrians. The City also argued the lack of foreseeability.

In response to the City's summary judgment motion, Deborah Stenzel filed a declaration of Airway Heights former Chief of Police Lee Bennett. Airway Heights asked the superior court to strike this declaration of Lee Bennett. Although the court criticized the credibility of the declaration, the court did not grant the motion to strike.

Daniil Dumbrava likewise moved for summary judgment. Dumbrava contended that Stenzel assumed the risk of injury when crossing outside a marked crosswalk because of its convenience. The superior court granted summary judgment in favor of Airway Heights and Daniil Dumbrava.

7

LAW AND ANALYSIS

Deborah Stenzel appeals both the summary judgment dismissal of Airway Heights and Daniil Dumbrava. We address Stenzel's claims against the respective respondents in such order.

Claim against Airway Heights

On appeal, Airway Heights renews its argument that Deborah Stenzel jaywalked across Hayford Road, and the City owed no duty to render the road safe for jaywalkers. Airway Heights insists that the law does not consider the pavers pads where Stenzel crossed the street to signify a crosswalk. Finally, the City contends that it lacked no duty to Stenzel to have prevented her from being struck by Daniil Dumbrava's vehicle because the collision was not foreseeable.

Deborah Stenzel argues that, because a reasonable person would consider the pavers pads to connote a crosswalk, she did not jaywalk. She further argues that, assuming she jaywalked, Airway Heights still owed her a duty to maintain a reasonably safe road for her and others like her. Finally, she contends that her injuries were foreseeable particularly when reading the testimony of Chief of Police Lee Bennett.

We recite the obligatory summary judgment principles. We review a trial court's order granting summary judgment de novo. *Briggs v. Nova Services*, 166 Wn.2d 794, 801, 213 P.3d 910 (2009) (plurality opinion). The superior court should grant summary

8

judgment when the pleadings, depositions, answers to interrogatories, admissions, and affidavits demonstrate the absence of a genuine issue of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). A material fact affects the outcome of the litigation. *Ranger Insurance Co. v. Pierce County*, 164 Wn.2d 545, 552, 192 P.3d 886 (2008). The moving party bears the burden of showing the absence of any genuine issue of material fact and entitlement to judgment as a matter of law. *Hartley v. State*, 103 Wn.2d 768, 774, 698 P.2d 77 (1985). We construe all facts and reasonable inferences in favor of the nonmoving party. *Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982).

The city of Airway Heights cites four Washington statutes that it claims establish that Deborah Stenzel did not use a crosswalk and she jaywalked. We quote all four.

> "Crosswalk" means the portion of the roadway between the intersection area and a prolongation or connection of the farthest sidewalk line or in the event there are no sidewalks then between the intersection area and a line ten feet therefrom, except as modified by a marked crosswalk.

RCW 46.04.160.

> (1) "Intersection area" means the area embraced within the prolongation or connection of the lateral curb lines, or, if none then the lateral boundary lines of the roadways of two or more highways which join one another at, or approximately at, right angles, or the area within which vehicles traveling upon different highways joining at any other angle may come in conflict.

RCW 46.04.220.

> Pedestrians shall be subject to traffic-control signals at intersections as provided in RCW 46.61.060, and at all other places pedestrians shall be accorded the privileges and shall be subject to the restrictions stated in this chapter.

RCW 46.61.230.

> (1) Every pedestrian . . . crossing a roadway at any point other than within a marked crosswalk or within an unmarked crosswalk at an intersection shall yield the right-of-way to all vehicles upon the roadway.
> (2) Where curb ramps exist at or adjacent to intersections or at marked crosswalks in other locations, persons with disabilities or personal delivery devices may enter the roadway from the curb ramps and cross the roadway within or as closely as practicable to the crosswalk. All other pedestrian rights and duties as defined elsewhere in this chapter remain applicable.
> . . . .
> (4) Between adjacent intersections at which traffic-control signals are in operation pedestrians shall not cross at any place except in a marked crosswalk.
> . . . .
> (6) No pedestrian or personal delivery device shall cross a roadway at an unmarked crosswalk where an official sign prohibits such crossing.

RCW 46.61.240.

RCW 46.61.240(4) prohibits a pedestrian from crossing a road at any place other than a marked crosswalk between adjacent intersections, both of which maintain traffic control signals. Airway Heights presented no evidence that a traffic control device controlled the intersection between Hayford Road and the nearest intersection north of Highway 2. RCW 46.61.230 implies that the law permits a pedestrian to cross a

10

roadway other than at a marked crosswalk, but a vehicle on the roadway enjoys the right-of-way, not the pedestrian. We doubt that the definition of a "crosswalk" found in RCW 46.04.160 covers the area of the pavers pads where Deborah Stenzel crossed Hayford Road. But we need not analyze the definition in order to grant Stenzel her request for reversal.

We move to principles of municipal liability for roadways. A municipality possesses an obligation to exercise ordinary care to maintain its public ways in a reasonably safe condition for ordinary travel. *Keller v. City of Spokane*, 146 Wn.2d 237, 245, 44 P.3d 845 (2002); *Hansen v. Washington Natural Gas Company*, 95 Wn.2d 773, 776, 632 P.2d 504 (1981). Contrary to Airway Heights' contention, this duty extends, not only to people using the roads in a reasonable manner, but also to all persons, whether negligent or fault-free. *Keller v. City of Spokane*, 146 Wn.2d 237, 249 (2002). Before *Keller*, Washington followed the rule that a city's duty extended to those using the road in a proper manner. *Hansen v. Washington Natural Gas Company*, 95 Wn.2d 773, 777 (1981); *McKee v. City of Edmonds*, 54 Wn. App. 265, 267, 773 P.2d 434 (1989).

Under *Keller v. City of Spokane*, the municipality owes a duty to a jaywalker. Deborah Stenzel's status as a jaywalker may lead the jury to consider her comparatively at fault, but it does not excuse Airway Heights from liability. *Keller v. City of Spokane*, 146 Wn.2d 237, 244 (2002).

11

A municipality's duty of maintaining a public road also extends to misleading conditions. *Keller v. City of Spokane*, 146 Wn.2d 237, 249 (2002); *Hansen v. Washington Natural Gas Company*, 95 Wn.2d 773, 775 (1981). The existence of an unusual hazard may require a city to exercise greater care than would be sufficient in other settings. *Owen v. Burlington Northern & Santa Fe Railroad Co.*, 153 Wn.2d 780, 788, 108 P.3d 220 (2005). Whether a condition is misleading generally poses a question of fact, not one suitable for summary judgment. *Hewitt v. Spokane, Portland & Seattle Railway Company*, 66 Wn.2d 285, 290, 402 P.2d 334 (1965); *Provins v. Bevis*, 70 Wn.2d 131, 422 P.2d 505 (1967). Likewise, the adequacy of the government's attempt to take corrective action generally poses a question of fact. *Owen v. Burlington Northern & Santa Fe Railroad Co.*, 153 Wn.2d 780, 788 (2005).

These principles require a reversal of summary judgment in favor of Airway Heights even when assuming Deborah Stenzel to have jaywalked. Not only the presence of the pavers pads, but also a lack of lighting in an area known by city officials to be of high traffic, could lead a reasonable jury to conclude Airway Heights did not maintain a safe road. Also of importance, a jury could conclude that a reasonable person, because of the pavers pads, determined the area constituted a place to cross the street despite the lack of crosswalk markings. The yellow tactile warning pavers with truncated domes gave the appearance of an official crosswalk according to Chief Lee Bennett.

12

The city of Airway Heights relies on *McKee v. City of Edmonds*, 54 Wn. App. 265 (1989), to argue that the City owed no duty to protect Deborah Stenzel. In *McKee*, Mary McKee tripped while crossing Main Street in downtown Edmonds. Although crosswalks existed at both ends of the block, McKee became distracted and attempted to cross mid-block. Before reaching the center line, she tripped into a pothole and fractured her leg. At the time, a city ordinance prohibited crossings outside marked crosswalks. The location where McKee fell had been a marked crosswalk until 1978, when the city of Edmonds removed it, leaving marked crosswalks at either end of the block. In affirming dismissal, this court wrote that the law does not sanction recovery for jaywalkers when a crosswalk was readily available.

We need not dissect the facts in *McKee v. City of Edmonds* with the facts in Deborah Stenzel's appeal. *Keller v. City of Spokane*, 146 Wn.2d 237 (2002), as a Supreme Court decision, holds priority over *McKee*.

Airway Heights also argues that it held no duty to Deborah Stenzel because of the lack of foreseeability of Stenzel's collision with Daniil Dumbrava's car. The City contends it lacked any actual or constructive notice of a potential unsafe condition along Hayford Road. Whether a municipality owes a duty in a particular situation generally includes a determination of whether the incident was foreseeable. *Keller v. City of Spokane*, 146 Wn.2d 237, 243 (2002). The testimony of Chief Lee Bennett belies the

13

City's contention. Airway Heights suggests that Deborah Stenzel needed to produce evidence establishing that jaywalking or pedestrian injuries occurred with greater frequency in the area of her harm than other areas within Airway Heights. The City cites no law for this proposition. We are unaware of any such novel principle of law.

On appeal the city of Airway Heights impliedly asks this court to ignore the declaration of Lee Bennett. The City criticizes Bennett's testimony as grievously flawed. The City asked the superior court to strike the declaration of Lee Bennett. Although the court criticized the credibility of the declaration, the court did not grant the motion to strike. Airway Heights does not cross appeal this ruling. It provides this court no legal analysis as to whether the court should ignore the declaration.

Claim against Daniil Dumbrava

On appeal, Daniil Dumbrava asserts that implied primary assumption of risk completely bars Deborah Stenzel's recovery against him. According to Dumbrava, Stenzel knowingly encountered the risk of being struck by a car as she crossed Hayford Road. We disagree.

We briefly explore the variegated versions of assumption of risk. The term "assumption of the risk" expresses several distinct common-law theories, derived from different sources, which apply when a plaintiff knowingly exposes herself to particular risks. *Pellham v. Let's Go Tubing, Inc.*, 199 Wn. App. 399, 409, 398 P.3d 1205 (2017);

14

W. PAGE KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 68 (5th ed. 1984). Washington law and most other states' jurisprudence recognize four taxonomies of the assumption of risk doctrine: (1) express, (2) implied primary, (3) implied unreasonable, and (4) implied reasonable. *Gregoire v. City of Oak Harbor*, 170 Wn.2d 628, 636, 244 P.3d 924 (2010); *Pellham v. Let's Go Tubing, Inc.*, 199 Wn. App. 399, 409 (2017); 16 DAVID K. DEWOLF & KELLER W. ALLEN, WASHINGTON PRACTICE: TORT LAW AND PRACTICE § 9:11, at 398-99 (4th ed. 2013). Daniil Dumbrava asserts the defense of implied primary assumption of risk.

Implied primary assumption of risk requires three elements of proof: the evidence must show the plaintiff (1) had full subjective understanding (2) of the presence and nature of the specific risk, and (3) voluntarily chose to encounter the risk. *Gregoire v. City of Oak Harbor*, 170 Wn.2d 628, 636, 244 P.3d 924 (2010); *Kirk v. Washington State University*, 109 Wn.2d 448, 453, 746 P.2d 285 (1987). The test is a subjective one: whether the plaintiff in fact understood the risk; not whether the reasonable person of ordinary prudence would comprehend the risk. *Egan v. Cauble*, 92 Wn. App. 372, 378, 966 P.2d 362 (1998). The plaintiff must know that the risk is present, and she must further understand its nature. *Brown v. Stevens Pass, Inc.*, 97 Wn. App. 519, 523, 984 P.2d 448 (1999).

Knowledge and voluntariness are questions of fact for the jury, except where reasonable minds could not differ. *Egan v. Cauble*, 92 Wn. App. 372, 377 (1998). Because the evidentiary standard is so high when proving implied primary assumption of risk, Washington State has never applied implied primary assumption of risk to bar recovery in any case. *Gregoire v. City of Oak Harbor*, 170 Wn.2d 628, 645 (2010) (Chambers, J., concurring).

Daniil Dumbrava relies on a series of Washington decisions: *Iwata v. Champine*, 74 Wn.2d 844, 447 P.2d 175 (1968); *Jerdal v. Sinclair*, 54 Wn.2d 565, 342 P.2d 585 (1959); *Hamblet v. Soderburg*, 189 Wash. 449, 65 P.2d 1267 (1937), which dismissed claims by pedestrians struck by vehicles. The Washington courts decided all of these decisions before the Washington Legislature introduced comparative fault.

RCW 46.61.240 demands that a pedestrian, crossing a roadway at any point other than within a crosswalk, must yield the right-of-way to vehicles on the road. This statute at most suggests the pedestrian is negligent, but the statute does not relieve the vehicle's driver from also exercising reasonable care. Daniil Dumbrava's forward car stopped in the middle of the block rather than at a controlled intersection. A jury could conclude Daniil Dumbrava should have taken the precaution to also stop behind the forward car.

16

CONCLUSIONS

We reverse the summary judgment dismissals of claims against the city of Airway

Heights and Daniil Dumbrava and remand to the superior court for further proceedings.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

_____
Fearing, J.

I CONCUR:

_____
Murphy, J.

No. 39929-0-III
(consolidated with
No. 40248-7-III)

LAWRENCE-BERREY, C.J. (concurring) — I write separately to explain why, in my

view, this court must reverse the summary dismissal of both claims.

"Washington courts generally follow the rule of party presentation under which

appellate courts 'normally decide only questions presented by the parties.'" *Dalton M,*

*LLC v. N. Cascade Tr. Servs., Inc.*, 2 Wn.3d 36, 50, 534 P.3d 339 (2023) (internal

quotation marks omitted) (quoting *Greenlaw v. United States*, 554 U.S. 237, 244, 128 S.

Ct. 2559, 171 L. Ed. 2d 399 (2008)). The city of Airway Heights (City) argues it owed

no duty to a jaywalker. The lead opinion correctly refutes this. The City next argues it

owed no duty to Ms. Stenzel because there is no evidence it could foresee her injury.

Again, the lead opinion correctly refutes this. If the City has a basis for summary

dismissal of Ms. Stenzel's claim, it did not make that argument to us.

Daniil Dumbrava argues that Ms. Stenzel's assumption of the risk excuses him

from exercising ordinary care. Once again, the lead opinion refutes this argument. A

reasonable trier of fact could find that Mr. Dumbrava bears some fault for not recognizing that the car slowing in front of him was slowing because there was a jaywalker.

For these reasons, I concur.

Lawrence-Berrey, C.J.